# Birmingham Railway & Electric Co. v. Baylor.

*Action against Railroad Company by an Employé to recover Damages for Personal Injuries.*

1. *Pleading; averments in single count of separate causes of action, and several averments of one cause of action; evidence to sustain such counts.*—Where a single count contains several distinct, independent averments, each presenting a substantive cause of action, proof of either cause of action, so averred, will authorize a recovery; but where a count contains several averments, all of which, combined together, make up the averment of but one cause of action, it is necessary to prove each of the averments in order to sustain the cause of action as laid.

2. *Redundancy in complaint.*—Mere redundancy will not vitiate a complaint; the redundant portion may be either stricken out or rejected as surplusage.

3. *Section foreman of a railroad; his duties.*—A section foreman of a railroad is not a person in charge of a switch, within the meaning of subdivision 5 of section 2590 of the Code of 1886, in the sense that it is his duty to see that it is properly opened or closed; his duty is rather that of a superintendent under subdivision two of said section, to superintend and see that the ways, works, machinery and plant are kept in order.

4. *Person in charge or control of a switch.*—If no person has been specially appointed to the duty of opening and closing a switch, and a spur track, connected with the main line of such switch, is in constant use in order that trains may pass each other, and the engineers and conductors are provided with keys to the switch for that purpose, such persons, *pro hac vice,* are in charge of the switch within the meaning of the statute.

5. *Action for negligence of persons in charge of switch; sufficiency of evidence to submit question to jury.*—Where, in an action against a railroad company for personal injuries to an employé caused by a train going through an open switch, there is a count in the complaint charging negligence on the part of persons in the employ of the defendant, who had charge of the switch, in leaving it open, and there was evidence that the switch was provided with a suitable lock, that the section foreman, conductors and engineers each had a key, that the switch was used about 30 minutes before the accident, and the engineer then using the switch testified that it was properly secured be-

Vol. 101.

[Birmingham Railway & Electric Co. v. Baylor.]

fore he left it, there was sufficient evidence to submit to the jury plaintiff's right to recover under such count.

6. *When averment of two acts of negligence constitutes but one cause of action; evidence to justify recovery under such count.*—Where in an action against a railroad by employé for injuries resulting from a train running into an open switch, it is averred in a count of the complaint that the injuries were caused by the negligence of defendant's employés, who had charge of the switch, in failing to properly secure it, and by the negligence of persons in defendant's employ, who had charge of the train, in failing to properly supply it with equipments for bringing it to a quick stop, by reason of which failures said switch did come open, such count contains but one cause of action, based upon the co-operating negligence of the two classes of persons; and without the proof of negligence of both there can be no recovery under the count.

7. *Dummy railroads subject to same rules as to use of safeguards and appliances as ordinary railroads.*—Corporations or persons operating dummy lines engaged in running both passenger and freight trains, that have regular stations and section foremen, and use engines capable of great speed, and which traverse a large section of country, are required to observe the same rules and regulations and adopt and use such appliances and safeguards as are in use and deemed necessary by well regulated railroads of the ordinary character. (*Birmingham Ry. & Elec. Co. v. Allen,* 99 Ala. 359, followed.)

8. *Action against railroad company; relevant evidence.*—In an action for injuries to a railroad employé caused by the train on which he was employed running through an open switch, where there was evidence that locks had been used on defendant's switches for six months and other evidence that a lock had never been put on the switch in question, the evidence of a witness that he was employed by defendant up to two months before the accident, and that there were then no locks in use on the road, is relevant and admissible.

9. *Same; conclusion of witness.*—In an action for injuries arising from a train running through an open switch, the engineer of the train which had been the last to pass through the switch previous to the accident, can not testify that the switch was secure when he passed through it, without first stating its condition and how it was secured.

APPEAL from the Birmingham City Court.

Tried before the Hon. W. W. WILKERSON.

This was an action brought by the appellee, through his next friend, against the appellant corporation; and sought to recover for personal injuries alleged to have been caused by the negligence of the defendant.

On the examination of J. J. Kennedy, as a witness for the plaintiff, he testified that he was a locomotive en-

gineer and had been about fourteen years; that the plaintiff was injured while running as fireman on the same dummy on which he was engineer. After testifying as to the accident which resulted in the injury to the plaintiff, he testified that he examined the switch after the wreck, and it was at that time open to the side track, and was all right except for the absence of a switch lock; but that there was no one at the switch to undertake to signal that there was danger from the switch being open. The plaintiff then asked the witness the following question : "I will ask you if you know what the custom is of well regulated railroads as to the manner of securing switches?" The defendant objected to this question on the ground that the witness was not shown to know the custom upon the kind of railroad or dummy line that was operated by the defendant, and upon which plaintiff was injured. The court overruled the defendant's objection, and defendant duly excepted. The witness stated that he knew what the custom was upon well regulated railroads, and that the custom was to have locks on the switches. The defendant also moved to exclude this answer on the same grounds, and duly excepted to the court's overruling this motion.

On the examination of L. M. McLemore, as a witness for the plaintiff, he testified that he had been in the employ of the defendant, and knew the location of the switch at which the accident occurred; that he did not know whether there was a lock on said switch when he was running on the train of the defendant; that he did not see any, and that two months before the plaintiff was injured he ran into the same switch. The defendant moved to exclude that portion of this witness' testimony in which he testified that two months before the accident he ran into the switch at the place of the accident; but the court overruled the defendant's motion, to which ruling the defendant duly excepted.

The defendant introduced as a witness one William Dill, who testified that he was an engineer on the defendant's road, and that on the night of the accident he passed on to the side-track, at the switch where the accident occurred, for the purpose of letting the engine on which the plaintiff was fireman pass by, going on to Bessemer, which was about 30 or 40 minutes before the accident occurred; that after this train had passed on he moved

out of the side-track on to the main line, and went on to Birmingham. The defendant then asked the witness the following question : "Tell the jury the condition of the switch after you moved out, whether it was safe or not?" Plaintiff objected to this question, in that it called for a conclusion of the witness, which objection the court sustained, and the defendant duly excepted. The defendant then asked the witness to "state whether it would be reasonably safe for a train to pass over the switch left as you left it that night?" The court sustained the plaintiff's objection to this question, and the defendant duly excepted.

The defendant requested the court to give, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked : (4.) "I charge you that the law does not require the defendant to use the latest improvements or inventions in the operation of its road, but that the law is satisfied if the switch is reasonably safe for its employés; and I charge you that if you believe from the evidence that, on the morning of the accident, the defendant's switch was reasonably safe if properly used, you must find for the defendant." (5.) "If you believe from the evidence that on the morning of the accident the section boss left the switch locked in the condition testified to by witness Aldrich, and that he did not have occasion, and that his duties did not require him, to examine the switch afterwards during the day, and that he did not know but that the switch was locked at the time of the accident, then you must find for the defendant upon the first and second and third counts of the complaint." (16.) "I charge you that, under the evidence in this case, you must find in favor of the defendant."

The other facts pertaining to the questions considered by this court on the present appeal are sufficiently stated in the opinion. In accordance with the verdict of the jury, there was judgment for the plaintiff assessing his damages at $2,300. The defendant appeals, and assigns as error the rulings of the trial court upon the evidence, to which exceptions were reserved, and the refusal of the court to give the several charges asked by the defendant.

R. H. PEARSON and JOHN F. MARTIN, for appellant.

LANE & WHITE, contra.

COLEMAN, J.—The plaintiff Baylor, a minor, sues by his next friend under the Employer's Liability Act, section 2590 of the Code, to recover damages for injuries sustained while in the employment of defendant as fireman. As the case must be reversed for causes hereafter considered, we deem it proper to consider the sufficiency of the complaint, lest our failure to do so, be construed as an admission that the complaint is free from error. It is proper to add, in justice to the trial court, that the defendant did not demur to the complaint, and trial was had upon the general issue. It is necessary to clearly understand and keep constantly in view the several causes of action as laid in each count, to test the correctness of the rulings of the court upon questions of evidence and instructions to the jury. We have heretofore declared many of the principles embodied in the Employer's Liability Act, and defined rules of pleading to be observed in framing the complaint, and pleas thereto. In the case of *Highland Ave. & Belt R. R. Co. v. Dusenberry*, 94 Ala. 413, 419, 10 So. Rep. 274, it was declared that, "when the plaintiff, in a single count, shifts his right of action, from one ground to another, and states several breaches of duty in the alternative, or disjunctively, so that it is impossible to say upon which of several equally substantive averments he relies for the maintenance of his action, then there is such confusion and obscurity as to the ground upon which a recovery is claimed that the defendant is not clearly informed of the matter to be put in issue, and a count so substantially variant and contradictory, is demurrable. * * * Inextricable confusion of issues would result from the blending in one count of a number of distinct breaches of duty as independent grounds of recovery, to be chosen from and relied upon at the election of the plaintiff. Perspicuity and certainty in his pleadings are not exacted of the plaintiff if he is permitted to put forward in one count several independent causes of action, stated in such ambiguous terms as to leave the defendant wholly in doubt as to what alleged breach of duty is really made the ground of the charge of liability." These rules were declared as applicable to the complaint then under consideration, an examination of which showed that several causes of action and distinct breaches of duty, arising under separate subdivisions of

section 2590, were united and blended in one count, and in some instances averred in the alternative. The rule declared in the *Dusenberry Case* in regard to the pleadings was recognized in the case of *Kansas City, M. & B. R. R. Co. v. Burton*, 97 Ala. 240, 12 So. Rep. 90. In the case of *L. & N. R. R. Co. v. Mothershed*, 97 Ala. 261, 12 So. Rep. 714, referring to the *Dusenberry Case, supra*, we said : ''It was not held, that when several causes of action averred and relied on for recovery arose under the same subdivision of section 2590 of the Code were stated separately, but not disjunctively, and each averment contained a substantive cause of action such a count was demurrable. A count of this character fully informs the defendant that each substantive averment is relied upon, and he may prepare his defense accordingly. Proof of either will authorize a recovery. The distinction must be kept in mind, where a single count contains several distinct, independent averments each presenting a substantive cause of action, and a count containing several averments all of which combined together make up the one cause of action averred. As to the former, proof of either will authorize a recovery, whereas in the latter it is necessary to prove each of the averments, in order to sustain the cause of action as laid.'' Mere redundancy will not vitiate a complaint. The redundant portion may be stricken out, or rejected as surplusage. Let us apply these principles to the several counts of the complaint, and also examine the ruling of the court upon the several instructions refused, with reference to the evidence as applicable to the several counts. The negligence charged in the first count is ''of persons in the employment of the defendant who had charge of the switch * * * in leaving said switch open'' &c. The cause of action here averred is that given by subdivision 5 of section 2590. The question arises, as to who was in charge of the switch, and what is meant by ''charge or control of a switch?''

The defendant introduced evidence as follows : ''Mr. Aldrich had charge of looking after the switches and keeping them in order ; he was the section boss or road master. Aldrich was the man that looked after the switches. The sections were seven or eight miles.'' Turning to Aldrich's testimony, and he states that he was section foreman, that he went his rounds the morn-

ing of the day on which plaintiff was injured at night. "I did not have occasion to pass there any more during the day; I had no notice of or reason to think that the lock had been taken away up to the time that Baylor was hurt." We do not think the section foreman was a person in charge of the switch in such sort that it was his duty to attend to and watch the switch and see that it was properly closed or opened. His duty was rather that of a superintendent under subdivision 2, and he was required to superintend and see that the ways, works, machinery and plant, so far as these terms embraced his duties, were kept in order; and if it could be said that he was in charge of the switch in any sense, it would be for this purpose, and not for the purpose of attending to the closing or opening of the switch. See *Burton's Case, supra*. No special person was put in charge of the switch, and yet we are satisfied that, under the evidence, there were persons in charge of the switch, within the meaning of the statute.

The evidence for the defendant is that the switch was provided with a suitable lock, and that the section foreman, conductor and engineer, each were provided with a key to this lock. If the foreman, Aldrich, was not charged with the duty of attending to the opening and fastening of the switch, and no one was specially appointed to this duty, and the spur track, connected to the main line by this switch, was in constant use in order that the trains might pass each other, and the enengineers and conductors were provided with keys for this purpose, there is no other conclusion open, but such persons, *pro hac vice*, were in charge of the switch. The evidence shows that William Dill, an engineer in charge of an engine, used the spur track about thirty minutes before the accident. True he testifies that he saw that the switch was properly secured (not shown to be locked) before he left it, but the evidence is conclusive, that the next train passing along, and upon which plaintiff was injured, left the main track and went through the switch on the spur track in about thirty minutes afterwards. We think there was sufficient evidence to submit to the jury plaintiff's demand under the first count of this complaint. There was no error in refusing the 4th, 5th and 6th charges requested by the defendant.

We come now to the second count, and this count brings

up for consideration the principles of pleading referred
to in a former part of this opinion. It is averred in this
count that the injury was caused by "the negligence of
of persons in the employment of the defendant, who had
charge of the switch, * * in failing to properly fasten or
secure said switch so that the same would not come open,
and by reason of the negligence of persons in the employ-
ment of the defendant, who had charge of said train, to
properly supply it with equipments for bringing the
same to a quick stop, by reason of which said failures
[plural] said switch did come open, thereby," &c.
"Plaintiff avers that he was aware that persons superior
to him engaged in the service or employment of the de-
fendant knew that said switch was not properly fastened
or secured, and that said train was not properly equipped
for coming to a quick stop," &c. This count considered
as a whole is very confused. The negligence first
charged consists in a failure to "properly fasten or se-
cure said switch," and, as we interpret it, arises as in
the first count under subdivision 5 of the act. The neg-
ligence next charged is the failure to properly supply
the train "with equipment for bringing the same to a
quick stop." This charge is for a defect in the ways,
works, machinery or plant, and arises under subdivision
1 of the act, and it is averred that the failure to provide
"equipments for bringing the same to a quick stop" was
by reason of the negligence of the persons "who had
charge of the train." The conductor had charge of the
train at this time, and there is no averment nor proof
that it was his duty to supply "proper equipments."
Moreover, the act itself provides that the master or em-
ployer is not liable under subdivision 1 (for defect in the
ways, works, machinery or plant), unless the defect
therein mentioned arose from, or had not been discov-
ered or remedied owing to the negligence of the master
or employer, or of some person in the service of the mas-
ter or employer and entrusted by him with this duty,"
&c. The count contains no sufficient averment to show
a liability for negligence under subdivision 1. If we
consider the words, "in failing to properly fasten or se-
cure said switch so that the same would not come open,"
as referring to a defect in the switch itself, and, there-
fore, as charging a defect in the ways, works and ma-
chinery or plant under subdivision 1, so as to bring both

charges under the same subdivision, and relieve it of the objection, that two substantive causes of action, arising under different subdivisions, are blended in one count, the count is objectionable for failing to make the necessary averments to show a liability under subdivision 1, in that the "defect arose from or had not been discovered or remedied," &c., as required by the act. We have said the count was not demurred to, but the general issue was pleaded. It becomes necessary to determine in what the cause of action charged in this count consists. We are of opinion, whether it be regarded as uniting a cause of action under subdivision 5 with one under subdivision 1, or whether as brought wholly under subdivision 1, the count does not contain two substantive distinct causes of action, proof of either of which will authorize a recovery; but it combines "the negligence of the person in charge of the switch, in failing to properly fasten or secure it," with the negligence of the person in "charge of said train, in failing to properly supply it with equipments for bringing the same to a quick stop," and the negligence of the two co-operated and together made the one cause causing the injury. The count proceeds, "by reason of which said failures [both of them] said switch did come open," which caused the injury. The count further proceeds, "plaintiff avers that he was aware that persons superior to him engaged in the service or employment of the defendant knew that said switch was not properly fastened or secured and that said train was not properly equipped for coming to a quick stop," thus continuing to combine the two causes as contributing to make up the one cause charged as producing the injury. The rule is very clear, that to authorize a recovery under such a count, the plaintiff is required to establish the negligence as laid, and without proof of both, there could be no recovery under this count. There is not only no proof that it was the duty of persons in charge of the train to supply it with the "equipments" referred to, but there is an entire absence of proof, that there was any defect in the respect charged. The court, therefore, erred in refusing to give the second charge asked by the defendant, which requested an affirmative charge under this count. Pleadings should be brief, perspicuous and in an intelligible form. We think there is much room to improve the second count under these rules.

[Birmingham Railway & Electric Co. v. Baylor.]

As we construe the third count it was brought under subdivision 5. It is averred that the injuries were caused "by the negligence of some person in the employment of the defendant who had charge of the switch, * * in failing to have properly fastened or secured the said switch so that the same would not come open, * * the engineer in charge of said engine negligently failing to use all proper means and appliances to stop said engine so that," &c. From the reading of the count, we are unable to determine whether the pleader intended in this count, to aver that the negligence of the person in charge of the switch, and the negligence of the engineer, combined together, formed the one cause, which caused the injury. If it was intended to charge two distinct substantive causes of action, it was easy to frame the count in such manner as to be easily understood. If the pleader had averred, that the injuries were caused, first, by the negligence of the person in charge of the switch, in failing to properly fasten the switch so as to prevent it from coming open when struck by the train; second, by reason of the negligence of the engineer in charge of said engine, in failing to use proper means and appliances to stop said engine, &c., it would be readily understood. Other phrases or statements would do equally as well as the one suggested as an illustration.

No pleas were filed to the 4th and 5th counts. We presume the case was tried throughout upon the general issue. The 4th count charges a defect in the ways, works, machinery and plant in this, that the switch was without a lock by which it could be securely fastened and left; and this count also charges negligence in the engineer in the "rapid running of the train, and a lack of skill or proper effort," &c. If the purpose was to rely upon each as a substantive cause of action, that averred under subdivision 1, and that under subdivision 5, each independent of the other, good pleading would require a separate count for each. *Burton's Case, supra.* But if it was intended to charge the two as one cause, it should be clearly expressed. We have stated what is necessary in either case to authorize a recovery. We have also stated what averments are necessary to show a liability under subdivision 1. The 5th count charges the engineer with negligence in the rapid rate of speed at which the engine was run, as the cause of the injury.

32

We can not tell what the evidence will be in this respect on another trial and will make no comments.

We know of no reason why corporations or persons engaged in operating dummy lines, like that of the defendant, should not be required to observe rules and regulations and adopt and use appliances and safe guards, which are in use and deemed necessary by well regulated railroads of the ordinary character. The evidence shows that the engines of defendant are capable of great speed, that it is engaged in running both passenger and freight trains, has regular stations and section foremen, and traverses a large section of country. We considered the responsibility of those operating dummy engines to some extent in the case of *Birmingham Min. R. R. Co. v. Jacobs*, 92 Ala. 187, 199, 9 So. Rep. 320; and in the more recent case of *Birmingham Railway & Elec. Co. v. Allen*, 99 Ala. 359, 13 So. Rep. 8, one cause of action charged was the negligence of the defendant in failing to provide locks for switches, and we held, there could be no difference in the application of the principle to dummy engines and engines of the ordinary character.

There are two assignments of error based upon exceptions to the ruling of the court as to the admission and rejection of testimony. There was no error in permitting the witness to state the condition of the switch two months prior to the injury. One of the disputed questions was whether the defendant had ever supplied the switch with locks. There was evidence tending to show that locks had been continually used for a period of six months with the exception of two or three days. The witness tesified that he was in the employ of defendant up to two months before the injury, and there were no locks in use. There was other evidence from which a jury might infer that a lock had never been put on this switch, while there was evidence offered by defendant to the contrary. In fact the section foreman testified he locked the switch on the morning of the day of the injury. These disputed facts can be determined only by the jury. It was not proper for the witness, William Dill, to state in the first instance, that the switch was safe after he moved out from it. It was proper to permit him to state its condition, how it was secured, and then state whether or not it was secure. The evidence showed that he was competent as an expert

[Ashurst v. Peck et al.]

to give his opinion.    Whether, it was negligence *per se,* not to provide locks for switches under the  evidence  in this case, was a question for the jury.    This record shows that one of defendant's witnesses, J. B. Downey, a master  mechanic,  testified that "The switches are  not safe unless they are locked down ; the jostling of the train throws them over."    There is other  evidence in  conflict with this testimony.    The truth must  be ascertained by the jury.

The plaintiff, his mother, and stepfather are all living. It will be an  easy matter on  another trial to furnish the necessary proof, if it exist, to show that plaintiff may re- recover for time during his  minority.

We have  given  this case careful  consideration and think we have said all that is necessary, in order to have the pleadings put in  proper form for another trial, and for a  just determination of all the questions which  will arise.

Reversed and  remanded.