193 So. 730

**ATLANTIC COAST LINE R. CO. v. HARDWICK.**

3 Div. 295.

Supreme Court of Alabama.

Jan. 18, 1940.

Rehearing Denied Feb. 22, 1940.

A. H. Arrington, of Montgomery, W. I.,
Lee and Alto V. Lee, III, both of Dothan,
and Evans Hinson, of Montgomery, for ap-
pellant.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee.

62

THOMAS, Justice.

The action was under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, for the death of plaintiff's husband and intestate.

The complaint was in two counts, ascribing the defects as "(1) said engine or locomotive was defective," and (2) "said ventilator door lever was defective."

There were no demurrers to the complaint. Defendant pleaded the general issue and each and every material allegation thereof (the two counts of complaint), and avers that the "same are untrue."

There were no special pleas of contributory negligence or assumption of risk.

The trial court refused to give the general affirmative charge requested by counsel for defendant. This action was warranted by the conflict in the evidence. The evidence showed that defendant was engaged in interstate commerce and plaintiff's intestate was so employed at the time of his injury and, while performing for defendant the duties of his employment, was injured by a break in defendant's ventilator door lever; that he had no duty to perform as to that door or the lever thereof as to maintenance.

The jury was warranted in finding that the lever was defective in several respects, as that it concentrated the strain on its narrowmost point and broke at such point; and that a safeguard to hold the lever when set should have been provided.

There was evidence to show to the reasonable satisfaction of the jury that said intestate's injuries as described proximately caused his death.

 Certain well established rules are to be applied in such case. (1) Defendant owed plaintiff's intestate the duty and exercise of ordinary care and prudence to the end that the place in which his work was to be done or performed and the tools and appliances furnished should be safe for such workman to use in doing his work. Federal Employers' Liability Act § 1, 45 U.S.C.A. § 51; 2 Roberts, Federal Liabilities of Carriers, p. 1553, Sec. 807. (2) Without relying on the rule of res ipsa loquitur (Louis Pizitz Dry 'Goods Co. v. Waldrop, 237 Ala. 208, 186 So. 151; Chamberlain v. Southern R. Co., 159 Ala. 171, 48 So. 703; Western Ry. Co. of Alabama v. Mays, 197 Ala. 367, 72 So. 641; Alabama Great Southern R. Co. v. Bailey, 112 Ala. 167, 20 So. 313; Master and Servant Cases, 2 Roberts, Federal Liabilities of Carriers, p. 1573, Section 820), the records and exhibits sent to this court for inspection contain substantial evidence to warrant the jury in finding that the *ventilator door lever was* worn and defective due to the negligence of defendant in the premises; that the lever broke and a part thereof struck upon plaintiff's intestate's head causing his injury and which injury proximately caused death.

Passing to the next assignment of error, we think, under the evidence there was no effort on defendant's part to suppress evidence to keep from plaintiff relevant testimony. The bill of exceptions recites that:

"In the opening statement of the case by counsel for plaintiff, he stated 'That the plaintiff had no opportunity to talk to the witnesses.' The defendant *objected to this statement,* and the *plaintiff's counsel* then *proposed* to *introduce* a *rule* of the *defendant company to that effect.* The *defendant's counsel then objected unless the plaintiff offered such a rule in evidence.* The *Court overruled* the *objection, conditioning its ruling on the plaintiff offering in evidence such a rule.* The plaintiff then made demand on the defendant for the defendant's company book of rules in force and effect on June 24, 1937, and in response to such demand said book of rules was furnished by the defendant's counsel. It was admitted that such book contained the rules governing the conduct of the employees of the Atlantic Coast Line on June 24, 1937, and was the rule book produced by the defendant upon plaintiff's demand in this case. Each of the rules offered in evidence by the plaintiff was contained in and offered from said rule book.

"Plaintiff offered to introduce in evidence Rule No. 711 of the Rule Book of Defendant governing the conduct of its employees, on June 24, 1937, as follows:

" '711. Employees are forbidden to give any statement or information, either verbal

or written, to attorneys or others about accidents or other matters pertaining thereto except to attorneys or representatives of this company.'

*"Defendant objected to the admission of the said rule 711 in evidence upon the grounds that it is incompetent, irrelevant and immaterial, and upon the additional grounds that said rule promulgated by the defendant to govern the conduct of its employees is not relevant evidence for any purpose in this case, or germane to any issue in this case; and upon the further and additional ground that said rule is not a rule in law that can govern the conduct of witnesses or prevent the processes of law through attorneys or otherwise as to their accessibility to witnesses, or as to what information any witness may have relating to the matters at issue.*

"The Court overruled the Defendant's said objections to the admission in evidence of said Rule 711, and admitted the said rule in evidence, to which action of the court in admitting the said rule in evidence, the defendant then and there duly and legally excepted."

█ In this action of the trial court there was error as tending to inject into the case immaterial and prejudicial matter. This action of the court and counsel occurred while the opening statement of plaintiff's counsel was being made to the jury. The rule in this Court relative to the effect of opening statements of counsel to the jury was the subject of recent decision in Wilkey v. State ex rel. Jim C. Smith et al., 238 Ala. 595, 192 So. 588.

The plaintiff's counsel seeks to explain this rule and the introduction of this prejudicial evidence, as follows: "The introduction of said rule in evidence was invited by the defendant when it objected to the statement of plaintiff's counsel that the plaintiff had not had an opportunity to talk to the witness *'unless the plaintiff offered such a rule in evidence*. The Court overruled the objection, *conditioning its ruling on the plaintiff offering in evidence such a rule.'* Under that objection and ruling the introduction in evidence of the rule was necessary to sustain the Court's ruling made at the instance of the defendant."

This is not a satisfactory explanation of the erroneous ruling that was made. Defendant's counsel was not consenting to the introduction of the rule and was trying to exercise his judgment under the rules to keep it out of the evidence. We have carefully examined the record and are impressed with its prejudicial effect and have added italics for convenient reference. That is to say, the act of defendant's counsel clearly shows at every stage of consideration an effort to prevent the introduction of said illegal evidence, and it is shown that the objection of defendant's counsel was made and maintained to prevent such prejudicial matter being given to the jury. This Court cannot too strongly emphasize to trial courts that cases should be tried on legal evidence, freed from interest, bias or prejudice on the part of the triers of the fact.

The next assignment of error is: "The Court erred in denying defendant's motion to take the case from the jury and declare a mistrial because of the misconduct of a bystander and the juror George T. McAdams." The evidence on this motion will be reproduced by the reporter.

In Craig & Co. v. Pierson Lumber Co., 169 Ala. 548, 53 So. 803, 804, this Court observed of improper conduct between a juror and a bystander, as follows:

" 'It is the general rule that a new trial will be granted if jurors are entertained during the trial by the party in whose favor a verdict is rendered. So it has been held ground for a new trial that the prevailing party furnished jurors with cigars or intoxicating liquors.' [17 Am. & Eng.Enc.Law (2d Ed.)] p. [1204] 1235.

"Aside from protecting the rights of parties, in the fair and impartial administration of justice, respect for the courts calls for their condemnation of any improper conduct, however slight, on the part of a juror, of a party, or of any other person, calculated to influence the jury in returning a verdict. So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. Not only the evil, in such cases, but the appearances of evil, if possible, should be avoided."

The case of New York Life Ins. Co. v. Turner, 210 Ala. 197, 97 So. 687, quotes with approval the excerpt we have set out from the case of Craig v. Pierson Lumber Co., supra.

In Oliver v. State, 232 Ala. 5, 166 So. 615, 617, this Court collected the later decisions of this Court to the effect that: "The test

**64**

of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute. The authorities on this subject are collected in Roan v. State, 225 Ala. 428, 435, 143 So. 454; Leith v. State, 206 Ala. 439, 443, 444, 90 So. 687; Lakey v. State, 206 Ala. 180, 182, 89 So. 605."

See also Leith v. State, 206 Ala. 439, 90 So. 687; Roan v. State, 225 Ala. 428, 143 So. 454; Bell v. State, 227 Ala. 254, 149 So. 687.

■ We find no better or wiser statement having application than that by Mr. Justice Gardner in Briggs v. Prowell, 215 Ala. 604, 606, 112 So. 197, 199, as follows:

"A fair and impartial jury trial forms the groundwork upon which the superstructure of our judicial system is erected, and the principle recognized in our cases and vigorously enforced rests upon grounds of public policy that this foundation should not be undermined. That it is the recognized rule generally appears from an examination of the authorities cited in the note to 2 Thompson on Trials, § 2559. It is likewise a long-established rule. One of the earlier cases of interest in this connection is that of Cox v. Tomlin, 19 N.J.L. 76, from which we take the following excerpt:

" 'To guard against such improper interference with jurors, and to keep the streams of justice pure and uncontaminated, jurors were formerly kept together from the time they were impaneled and sworn, until they rendered their verdict. The increase of litigation and the length and intricacy of causes, growing out of the extended and complicated transactions of a mercantile and trading people, long since rendered it necessary to relax this rigid practice, which was found to be inconvenient and oppressive to courts and jurors. But since they have been permitted to separate during the progress of trials, courts have sedulously endeavored to protect them from the *outdoor interference of parties and their coadjutors, by setting aside verdicts in all cases where such attempts have been made, without stopping to inquire, whether they had any influence on the verdict, or not. * * *' "* [Italics supplied.]

■ In the instant case the alleged approach to the juror McAdams was during the progress of the trial. It is manifest that the juror had a misconception of his duty as to giving attention to the evidence when it was being introduced. Mr. Johns or his wife were actively interested in the result of the trial and were friendly to the plaintiff and were instrumental in distracting the juror's attention, if not in making an intentional approach to him, as stated by appellant's witness Lancaster. Whether the motive was innocent or sinister on the part of the juror or Mr. or Mrs. Johns, it was highly improper. This trial should have been freed of such imputation of bias or questionable conduct on the part of a juror or from "outdoor interference." The exhibit carries suspicion of improper conduct in such form that the motion for mistrial should have been granted.

The witness Oliver had testified that he was the engineer on duty for defendant company when the accident and injury occurred. He had qualified as an expert generally and testified that he was familiar with the instant ventilator and support, and with everything connected with said engine; that he had had experience with such ventilators for a period of years and had pulled them down, opened them up and closed them. He stated, "I used this one on this engine over thirty days."

■ The defendant sought to show by the expert witness Oliver the condition of the ventilator lift in question, which was exhibited to the trial court and sent to this court for inspection. Defendant's question was: "Was it a support suitable and satisfactory for the purpose for which it was used?" The plaintiff's objection to this question was sustained by the court, defendant duly excepting. It will be observed that the question was of suitable and satisfactory character to be directed to an expert witness, having reference to the specific ventilator lift with which said expert was familiar. Appellee urges in this court that the error was without injury for that the witness later testified of this character of ventilator and ventilator support used by defendant company by saying: "That character of ventilator and ventilator support and everything combined here, has

been used on engines for over a period of years, they have been used ever since I have been here, and I have never seen one break before and never heard of one breaking before. * * *."

Thus the evidence given by said expert witness as to the *general character of ventilator* and *ventilator support* installed and used by the defendant company in its engines was not a direct answer to the question sought to be propounded to its expert and denied by the court on objection of plaintiff. In this ruling of the trial court there was reversible error. Alabama Connellsville Coal & Coke Co. v. Pitts, 98 Ala. 285, 13 So. 135, 137.

In the last cited case, Chief Justice Stone said: "The witness Lewis testified that he was well and long acquainted with the use, if not with the construction, of the machinery he was called to testify about. * * * We think he should have been permitted to testify that the pattern of the tipple employed on the occasion of the injury 'was reasonably adapted for the purpose for which it was used;' and, if he knew the condition it was in when the disaster occurred, whether in good repair, or the contrary, he could state that. * * *"

This decision has been followed in Tennessee Coal, Iron & R. Co. v. Carson, 205 Ala. 518, 88 So. 650; Oden-Elliott Lumber Co. v. Daniel-Gaddis Lumber Co., 210 Ala. 582, 98 So. 730; Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46; Southern Coal & Coke Co. v. Swinney pro ami, 149 Ala. 405, 42 So. 808; Birmingham Railway & Electric Co. v. Baylor, 101 Ala. 488, 13 So. 793.

Many authorities on this question from other jurisdictions supporting the right of expert testimony on the point for decision are collected in 51 L.R.A. page 566, et seq.

The cases of non-expert witnesses cited by appellee are not in point. Staples v. Steed, 167 Ala. 241, 52 So. 646, Ann.Cas. 1912A, 480; Nashville C. & St. L. Ry. v. Yarbrough, 194 Ala. 162, 69 So. 582.

For the errors of the trial court which we have pointed out the cause should be retried. It results that the judgment of the circuit court should be, and is, reversed and the cause is remanded.

Reversed and remanded.

BOULDIN, BROWN, and KNIGHT, JJ., concur.