93 So.2d 498

**ROBERTS CONSTRUCTION CO.**

v.

**C. L. HENRY, Jr.**

**6 Div. 39.**

Supreme Court of Alabama.

March 7, 1957.

1. Ante, p. 604.

Lange, Simpson, Robinson & Somerville and Wm. L. Clark, Birmingham, for appellant.

Maurice F. Bishop and Robt. S. Richard, Birmingham, for appellee.

STAKELY, Justice.

C. L. Henry, Jr. (appellee) instituted a suit in the Circuit Court of Jefferson County in which Roberts Construction Company, a corporation (appellant), was named with numerous other parties as defendant. All of the parties defendant with the exception of Roberts Construction Company, a corporation, Birmingham Rock Bit Company, Inc., a corporation, and Chicago Pneumatic Tool Company, a corporation, were eliminated prior to the trial of the case.

The case was submitted to the jury on three counts,—Count 1 as amended, Count 2 as amended and Count A. Count 1 as amended charges that on to wit June 30, 1954, plaintiff was driving his automobile upon a public street in the City of Albertville, Alabama, and that on said occasion, an agent, servant or employee of the defendants negligently injured the plaintiff by so negligently operating a motor vehicle and air compressor unit which was attached thereto, that the air compressor unit .was caused or allowed to crash into the automobile in which the plaintiff was driving.

Count 2 as amended charges that an agent, servant or employee of the defendants negligently injured the plaintiff by so negligently attaching an air compressor unit to a motor vehicle then and there being driven or operated by said agent, servant or employee of the defendants, that

the air compressor unit was caused to become disengaged and crash into plaintiff's automobile.

Count A of the complaint charges that the defendants Roberts Construction Company had in its possession and under its control under a rental or purchase option agreement from the defendant Birmingham Rock Bit Company, a corporation, a certain air compressor unit and attachment which were manufactured by the defendant Chicago Pneumatic Tool Company, a corporation, and alleges that the plaintiff's alleged injuries or damages were sustained as a proximate consequence of the negligence of the defendant Chicago Pneumatic Tool Company in that it manufactured or assembled said air compressor unit with a defective or dangerous tow bar attachment and the negligence of the defendant Birmingham Rock Bit Company in that it sold or leased to the defendant Roberts Construction Company the said air compressor unit and tow bar attachment when it knew or should have known that said tow bar attachment was defective or dangerous and was unsafe to be pulled or towed over the public streets and the negligence of the defendant Roberts Construction Company in negligently permitting or negligently causing the air compressor unit to be operated upon the public streets while said air compressor unit and the attachment thereto was in a defective and dangerous condition.

The pleading of the defendants was in short by consent. The jury returned a verdict in favor of the plaintiff and against the defendant Roberts Construction Company (appellant) and assessed the plaintiff's damages in the sum of $37,950. The court entered a judgment accordingly. Under the verdict rendered the court entered judgment in favor of the defendants Chicago Pneumatic Tool Company and Birmingham Rock Bit Company. The defendant Roberts Construction Company filed a motion for a new trial, which the court overruled. The defendant Roberts Con-

struction Company followed with this appeal.

We may summarize the principal questions presented upon this appeal as follows. (1) Did the trial court err in submitting the case to the jury as to the defendant, Roberts Construction Company, under Counts 1 and 2 of the complaint as amended, as to which the court directed the jury not to return a verdict in favor of the plaintiff and against the other defendants? (2) Did the trial court err in overruling the defendant's objection to certain alleged improper or prejudicial statements made by counsel for the plaintiff during the closing argument of the trial? (3) Did the trial court err in permitting, over the defendant's objection, a certain witness to express the conclusion that it was dangerous and unsafe for an air compressor unit to be towed upon the public streets in a certain manner? (4) Did the trial court err in refusing to give to the jury, at the request of the defendant, certain written instructions duly requested by the defendant? (5) Did the trial court err in overruling the defendant's motion for a new trial?

On the morning of June 30, 1954, at about 6:30 o'clock A. M., C. L. Henry, Jr. (appellee) left his home in Albertville on the way to work. He was driving his Chevrolet automobile along East Main Street in the City of Albertville in what appears to be an admittedly careful manner, well on his side of the street, which was thirty-one feet wide. As he approached 614 East Main Street, an International Truck of the defendant, Roberts Construction Company, driven by its employee, was going slightly down-grade in the opposite direction and pulling or towing a 3,300 pound air compressor. As the truck reached a point almost even with the car of C. L. Henry, Jr. (appellee), the air compressor unit broke or became disengaged from the truck pulling it, crossed over East Main Street on its wrong or left side of the street and ran into the side of the automobile of C. L. Henry, Jr., which was almost

if not against the curb on its right side of the street. Pictures introduced in evidence appear to show the tire marks of the Henry car against the curb on his side of the street. C. L. Henry, Jr. (appellee) pulled himself to the ground between the sidewalk and the curb. He was removed to the hospital in Albertville by ambulance where he was treated by Dr. H. L. Rogers, Chief Surgeon of the hospital. He was later examined by Dr. H. Earle Conwell, an eminent orthopedic surgeon of Birmingham. The personal injuries suffered by C. L. Henry, Jr. (appellee) will be described later.

The complete history of the air compressor was developed during the trial. Tendencies of the evidence show that the tow bar had not been broken or welded when in the possession of any person or firm who had possession of it prior to the delivery of it to the Roberts Construction Company on April 3, 1954. On the contrary Roberts Construction Company undertook to show by introducing pictures of a fractured or broken tow bar taken in Pittsburgh that the tow bar had been fractured or broken "at the point of a defective weld," the cause being careless and incompetent welding.

Tendencies of the evidence further show that on the morning of the collision the Superintendent of Roberts Construction Company, one Smith, instructed the driver one Horace Williams to "hook up the air compressor at the air port and take it to the job some miles distant." The truck had two pieces of steel [a hitch with a hole in them]. It was "rigged up" so that the eye of "the tow bar could be placed between these two pieces and a pin made out of a welding rod could be dropped down between the pieces." Tendencies of the evidence show that at the time of the accident the front wheel of the 3,300 pound tow bar air compressor was on the ground and not retracted. The air compressor is manufactured so that the front wheel can be retracted when moving it over the streets and highways by raising the wheel and inserting a pin in a hole to keep it in

a raised position when being moved. After the compressor is delivered to location the tongue or tow bar is raised and the front wheel is lowered by removing the pin that held it up during movement.

The testimony of expert witnesses with fifteen to thirty years experience tended to show that in the moving of air compressors from job-site to job-site, it was "unsafe", "irregular" and "not a customary practice" to move an air compressor with the front wheel down. One of these witnesses testified that it is not customary or standard practice to move an air compressor with the front wheel down and that if you do "something will break." Another of these witnesses testified that he considered it "very dangerous and very unsafe" to move an air compressor with the front wheel on the ground. There was other testimony to the same effect.

According to the evidence it appears to be undisputed that the air compressor was being pulled without any safety chains. Tendencies of the evidence show that it was a dangerous and unsafe practice to move an air compressor over the public streets without safety chains. The Superintendent of Warren Brothers Road Construction Company for the past fifteen years testified that it was customary to move air compressors over the streets from job-site to job-site and that it was and is the customary practice to use and require safety chains and that the use of safety chains "was a general safety practice."

There was other expert testimony of a similar nature and one of these witnesses testified that if the tow bar broke you would not lose the compressor if you had safety chains. That is the purpose of safety chains.

There was testimony tending to show that when various witnesses reached the point of collision immediately thereafter, no part of a tow bar eye or connection was in the hitch on the rear of the truck and there were no pieces on the street at the scene of the accident. One of the witnesses for the

Roberts Construction Company testified to the contrary.

The testimony appears to be undisputed that the air compressor became disengaged from the towing vehicle, crossed the street and crashed into the automobile of C. L. Henry, Jr. (appellee) with such force that the tow bar pierced the steel side of his automobile at the left front door and entered his car.

I. Appellant's assignment of error number one is based upon the refusal of the court to give to the jury at the request of the appellant, Roberts Construction Company, the following written charge:

"3. If you believe the evidence in this case, you should not return a verdict in favor of the plaintiff and against the defendant Roberts Construction Company, a corporation, under Count 1 of the complaint."

It will be recalled that Count 1 of the complaint charges that "an agent, servant or employee of the defendants, while acting within the scope of the duties of his employment, negligently injured the plaintiff and negligently damaged his automobile by so negligently operating," etc. So far as we can ascertain there was no evidence introduced upon the trial of the case which showed that the defendants were operating the truck and air compressor which was being towed on the occasion of the accident. We think it clear that the evidence showed that the appellant, Roberts Construction Company, was the only defendant responsible for the operation of the equipment that was involved in the accident with the plaintiff's automobile. We should keep in mind that the case proceeded to trial against three defendants, namely, Chicago Pneumatic Tool Company, the manufacturer of the air compressor; Birmingham Rock Bit Company, who leased or sold the air compressor to the appellant Roberts Construction Company, and Roberts Construction Company, the sole defendant against which the verdict was returned. The trial court directed a verdict in favor of the Chicago Pneumatic Tool Company as to all counts of the complaint. The trial court also directed the jury not to return a verdict against Birmingham Rock Bit Company under either count one or count two of the complaint. The case was submitted to the jury as to the appellant, Roberts Construction Company, a corporation, under Count 1, Count 2 and Count A.

The appellant insists that a party cannot proceed against two or more defendants jointly under one count of the complaint and against each of them separately in other counts. Therefore, it is strongly contended, that the court was in error in its refusal to direct the jury that it could not return a verdict against the appellant, Roberts Construction Company, a corporation, under Count 1 of the complaint.

The case of McMahen v. Western Union Telegraph Co., 209 Ala. 319, 96 So. 265, is cited by the appellant to support its position or claim. In order to understand the matter under discussion the difference between the foregoing authority and the instant case, should be immediately pointed out. In the McMahen case the plaintiff sued the telegraph company and the Louisville and Nashville Railroad Company for delay in transmitting a telegram. Count One claimed damages against both defendants and set up their joint liabilities. Subsequently the plaintiff added counts charging each of the defendants individually. Obviously that constituted a misjoinder and the attention of the trial court was directed thereto by specific demurrers pointing out that each count did not state a cause of action against all defendants. In the case at bar no such situation exists and each count of the complaint in the present case states a good cause of action against each defendant. The McMahen case involved a proper ruling on demurrers since the complaint was defective but in the instant case counts one and two charge that "an agent, servant or employee of the defendants while acting within the scope of the duties of his employment, negligently injured the plaintiff, etc. * *."

It is claimed by the appellant that an effort is made in the present case to circumvent the rule recognized in the McMahen case by averring in the complaint facts which evidently were known to be untrue and thereby charging a cause of action against the defendants jointly where the causes of action or at least some of them were several and not joint. It is argued that if the attorney for the plaintiff did not know the true facts as substantially set forth in Count A, then he should have elected at the close of the testimony or at least when he became advised that the court would submit the case to the jury against more than one defendant under Count One, whether he would proceed against all of the defendants under Count A of the complaint or against Roberts Construction Company (appellant) under Count One of the complaint.

We are not willing to say that the court was in error in refusing to give Charge 3. There was no motion to strike Count One as sham. See 71 C.J.S., Pleading, § 460 p. 948. By filing various counts of a complaint the pleader is allowed considerable latitude in order to cover any tendency which the evidence might take and which can be regarded as a basis of recovery. Certainly a pleading will not be stricken as sham unless it is set up in bad faith and without color of fact and every reasonable doubt must be resolved in favor of the pleading. 71 C.J.S., Pleading, § 460, p. 948.

There was no improper joinder of Count one as amended under allegations that the plaintiff was injured by the negligence of the defendants. There is no doubt that where several defendants are joined in an action, the plaintiff is entitled to go to the jury as to that defendant against whom he has made out his case, although a directed verdict may be ordered as to the others. § 139, Title 7, Code of 1940.

In Lovelace v. Miller, 150 Ala. 422, 43 So. 734, 735, 11 L.R.A.,N.S., 670, suit was brought against two defendants for assault and battery. This court said:

"It was contended by the defendants below that, as the complaint alleges an assault and battery committed by both of the defendants—a joint assault and battery—the plaintiff should show liability on the part of both of the defendants or there should be a verdict for both, albeit the evidence without conflict shows an assault and battery by one of them. * * * Going back to Chitty on Pleading, we find the law stated in the following language: '* * * Where in point of fact and of law several persons might have been guilty of the same offense, the joinder of more persons than were liable in a personal or mixed action in form ex delicto, constitutes no objection to a partial recovery, and one of them may be acquitted, and a verdict taken against the others.' * * * 'In actions ex delicto a joint liability need not be proved, and consequently a misjoinder of defendants will not defeat a recovery against any or either proved guilty.'"

In F. W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534, 536, it is said:

"'It is a well-settled rule of law that in actions of tort against two or more defendants jointly, where the proof fails as to any one, a verdict may be rendered against the other or others as to whom the proof is sufficient without thereby in law constituting a variance.' Southern Ry. Co. v. Arnold, 162 Ala. 570, 50 So. 293, 295. 'In actions ex delicto a joint liability need not be proved, and consequently a misjoinder of defendants will not defeat a recovery against any or either proved guilty.' Lovelace v. Miller, 150 Ala. 422, 43 So. 734, 735, 11 L.R.A.,N.S., 670, 14 Ann. Cas. 1139. Section 5720, Code of 1923 [Code 1940, Tit. 7, § 139], authorizes a recovery against one or more de-

**616**

fendants jointly sued. Rich v. Brewer, 205 Ala. 343, 87 So. 323."

■ There was no error in the refusal of the court to give Charge 3 as requested by the appellant, Roberts Construction Company.

II. The same argument is made by the appellant as to the giving of Charge 4, which is as follows:

"4. If you believe the evidence in this case, you should not return a verdict in favor of the plaintiff and against the defendant Roberts Construction Company, a corporation, under Count 2 of the complaint."

It is obvious that the same basic question is presented with reference to Charge 4 as was presented with reference to Charge 3. It is sufficient to say that there was no error in refusing to give Charge 4.

III. In the opening argument to the jury counsel for the plaintiff listed various items of damage that were related by the witnesses and which he claimed were established by the evidence. It seems that counsel for the defendant Roberts Construction Company, Incorporated (appellant) did not respond to the remarks made by counsel for the plaintiff and counsel for the plaintiff in the closing argument made the following statement:

"The attorneys for the defendants were asked by me during the opening argument to point out a single element of damage among the list I have written on the blackboard which they contend the plaintiff is not entitled to recover, if he is entitled to recover, and they have declined to do so. Therefore, the attorneys for the defendants must agree that the plaintiff is entitled to recover all of the elements which I have outlined, in the total sum of $38,256.50, if the plaintiff is entitled to recover."

Counsel for Roberts Construction Company objected to the foregoing argument.

The court overruled the objection to which exception was reserved. It is insisted that the argument of counsel for the plaintiff was in effect that the defendants, including appellant, admitted that the plaintiff was entitled to recover the sum of $38,256.50.

■ We do not agree with appellant's position. Counsel for the plaintiff merely invited counsel for the defendants to point out any element or item for which they felt there should be no recovery. No objection was taken to this statement. It does not seem to us that the situation in any way amounted to an admission as to the amount of the damages. It was just a method or way in which counsel for the plaintiff presented the claim of the plaintiff. This court in a number of instances has discussed the propriety of various remarks made to the jury in argument. For example, in Birmingham Electric Company v. Cleveland, 216 Ala. 455, 113 So. 403, 408, it was said:

"The court cannot too narrowly circumscribe the scope and latitude of argument. Counsel must be allowed, within limits to draw their own conclusions and to express their arguments in their own way, provided, of course, they do not travel out of the record or make use of unfair means to create prejudice in the minds of the jury."

In Smith v. Reed, 252 Ala. 107, 39 So. 2d 653, 657, it is said:

"In the matter of argument of counsel much must be left to the enlightened judgment of the trial court with presumptions in favor of the ruling."

The Alabama Constitution, section 10, secures to the parties the right to have their counsel in addressing the jury "to select and pursue their own line of argument, their own method of dealing with the testimony." Cross v. State, 68 Ala. 476.

In Louisville and Nashville Railroad Company v. Tucker, 262 Ala. 570, 80 So. 2d 288, 295 this court said:

"Considerable latitude is permitted counsel in arguing inferences from the evidence. City of Birmingham v. Bowen, 254 Ala. 41, 47 So.2d 174. Furthermore the right of counsel to pursue his own lines of argument within legitimate bounds is a constitutional right and as much discretion is allowed the trial court as is necessary to a due and orderly procedure. Birmingham News Co. v. Payne, 230 Ala. 524, 162 So. 116. We will not too narrowly criticize arguments of counsel in the matter of inferences drawn for illustration or figures of speech adopted in pressing a point."

See also Wheeler Motor Co. v. Stringer, 222 Ala. 494, 133 So. 10; Ex parte Messer, 228 Ala. 16, 152 So. 244.

There was certainly nothing inflammatory about the statement and we think the court was clearly not in error in overruling the objection.

IV. During the direct examination of the witness O. R. Johnson, witness for the appellant, counsel for the appellant handed the witness the eye of a tow bar which the appellant contended during the trial was the tow bar on the compressor on the morning of the accident. The tow bar eye handed to the witness was in evidence for the visible inspection of the jury and pictures of it were also in evidence. The witness was asked the following question:

"I will ask you if the places I point out on the top and bottom and the forward, that is, the uncut portion of this semi-circle, I will ask you if you have any judgment as to what caused that type of mark from your experience with metal?".

The court sustained the objection to the foregoing question.

The witness to whom the question was addressed was a welder for the defendant, Roberts Construction Company. He had no more authority to state whether the tow bar eye had any marks thereon than the jury because the eye was in evidence and pictures of it were in evidence for the personal examination of the jury. They could examine the piece which was in evidence for themselves. The question at best called for testimony such as was noted in Norwood Clinic v. Spann, 240 Ala. 427, 199 So. 840, 843, that "The evidence may also be said to be in respect to a matter of common knowledge, as to which the court would not be put in error for either admitting or rejecting it."

In Capital Motor Lines v. Gillette, 235 Ala. 157, 177 So. 881, 885, this court said: "Opinion evidence is not admissible touching matters the jury is as competent to judge as the witness." See also Pollard v. Rogers, 234 Ala. 92, 173 So. 881.

Assuming only for the sake of argument that the testimony sought to be elicited from the witness was admissible, the action of the court in sustaining the objection to the question does not in our opinion warrant a reversal. In Bates v. Rentz, 262 Ala. 681, 81 So.2d 349, 351, this court said:

" 'It is only when the error complained of "has probably injuriously affected the substantial rights of the parties" that we are authorized to reverse; and this is to be determined "after an examination of the entire cause." ' Morgan County v. Hill, 257 Ala. 658, 60 So.2d 838, 840."

There was no error in the action of the court in sustaining the objection to the question propounded.

V. The defendant's witness Smith testified on direct examination that when the

air compressor was at the air port on the morning in question, "the front or dolly wheel was approximately a foot or eighteen inches off the ground." But upon cross examination he testified that he did not remember whether the front wheel was up or down when the compressor left the air port. Mr. Henry described "the little wheel in front that I saw wobbling along." He was asked the following question to which he gave the following reply: "Q. Was it (the front wheel) on the ground? A. Yes, sir."

The witness William C. Warfel was asked the question, "Can you explain to the jury why it would be very dangerous and very unsafe to move an air compressor with the third wheel on the ground?" to which the witness gave the following answer: "There is always the likelihood that it might hit something. This wheel isn't designed to be towed that way, and that wheel being lower down, there would be the tendency for that to hit there and might hit a raised place in the ground or the road and cause the thing to upset."

█ We consider that there was no error in permitting an admittedly qualified expert witness to testify that in his opinion it would be unsafe to move an air compressor over the streets with the front wheel on the ground and our view is the same where the witness testified that it is unsafe practice to move an air compressor over the public streets without the safety chains and with the front wheel on the ground and not retracted.

█ Our attention is called to the recent decision by this court in Alabama Great Southern R. Co. v. Bishop, 89 So.2d 738, 744,[1] where this court held that it is error to admit expert opinion evidence on "a matter of common knowledge" and that the subject there under examination, "e. g., a crevice in the crossing (any more than a hole in the sidewalk or street) does not re-

quire expert opinion that it would be safe or unsafe for pedestrians." We consider that that is a case and a situation different from that here involved. Whether a sidewalk, street or railroad crossing, which juror or pedestrians cross every day, is in a reasonably safe or unsafe condition for such pedestrians, is a matter within the common knowledge of those jurors and one which they personally experience daily. But we do not think this is true where we are dealing with a situation as to towing a 3,300 pound air compressor to be used in a specialized construction undertaking. Rather we think that whether a qualified expert may give his opinion as to the safety or danger of an air compressor being towed without safety chains and with the front wheel down instead of retracted, is governed by the decision of this court in Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 So. 604, 607, which was cited with approval in the recent case of Alabama Great Southern R. Co. v. Bishop, supra. In the Burnwell Coal Company case, supra, the plaintiff contended that it was not safe to operate a mine car without a drag or a latch and this court approved expert testimony on that matter, saying: "An expert witness, qualified to that end, may give his opinion as to the safety or danger of a place or an appliance, when that issue is involved on the trial." See also Southern Coal & Coke v. Swinney, 149 Ala. 405, 42 So. 808; Edwards v. Southern Ry. Co., 233 Ala. 65, 169 So. 715, 106 A.L.R. 1133; Atlantic Coast Line R. Co. v. Hardwick, 239 Ala. 58, 193 So. 730.

To summarize we do not consider that the operation and towing of a 3,300 pound air compressor over the street is a matter of common knowledge like the condition of a hole in the street or sidewalk or a crevice in a railroad track. In addition to the foregoing, we refer to a statement contained in The Law of Evidence in Alabama by Judge McElroy, Third Edition, viii, as follows:

1. Ante, p. 118.

"The line of demarcation between matters that fall within the knowledge of mankind generally and matters that are the subject of special and peculiar knowledge, cannot from the nature of things, be accurately described. The one of necessity shades into the other, and though the extremes are readily determinable, appellate courts are fairly unanimous in vesting the judge with a measure of discretion whether he will or will not admit opinion evidence in cases which fall in the doubtful zone."

We call attention to the provisions of § 437, Title 7, Code of 1940, as follows:

"The opinions of experts on any question of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses."

There was no error committed by the court in ruling as it did on the matter here discussed.

█ VI. We note that no exceptions were taken to the court's oral charge. It is sufficient to say with reference to Charge 24, that it was fully covered by the court's oral charge as well as by other written charges given by the court.

Charge 25 is misleading in that it ignores the negligence of the appellant in failing to provide safety chains and in towing the air compressor with the front wheel on the ground and in ignoring an insecure coupling and defective hitch. It may also be said that eliminating the misleading portions this charge was covered by the oral charge.

Charges 30, 31 and 32 were each covered by the court's oral charge and the written charges given by the court.

█ VII. It is argued that the court was in error in overruling the motion for new trial on the ground that the verdict was excessive. We do not agree.

The plaintiff was 43 years of age at the time of the collision and was employed as a warehouseman. At that time he had a life expectancy of 26.01 years according to the Commissioner's Standard Ordinary Mortality Table and a life expectancy of 25.27 years according to the American Experience Table of Mortality. We will not undertake to set out in detail the testimony relating to the injuries of the plaintiff. It is sufficient to say that Dr. H. L. Rogers, who had been the family physician of the plaintiff, testified that before the accident the plaintiff appeared to be a normal healthy man but that the collision and resulting injuries had inflicted a nervous disability resulting in a loss of twenty pounds in weight. His testimony showed that plaintiff required medical treatment several times a week and that he knew nothing that "could totally eliminate his pain in his foot and leg. His testimony showed that both ankles had been broken. It appears to be undisputed that for the balance of his life the plaintiff will have to endure pain. His job opportunities appear to be restricted. He will be obliged to walk slew-footed the balance of his life and will have to live with that disfigurement. His nervous condition has been permanently impaired. He is a small man and has lost more than twenty pounds. He cannot sleep at night and will never be able to walk any distance or stand for any length of time without great pain.

Dr. Conwell, who is an eminent orthopedic surgeon, testified, "Yes, sir, he will have pain, no doubt about it." And he added that medical science knew of nothing that could eliminate his pain. Under his advice the left leg was reset and another cast applied. His left leg is permanently injured. It has little lateral or medial movement.

We have authorities which from time to time have stated the law on the issue of adequate compensation to an injured plaintiff. This law was summarized in the recent case of Louisville & Nashville R. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288, and

need not be here again set out. It will be recalled that the court who heard the evidence and saw the plaintiff refused to set aside the verdict and we find nothing that indicates that the verdict was the result of passion, prejudice, corruption or mistake. In short, as we stated at the outset, we find no error in the ruling of the court refusing to set the verdict aside.

It results that the judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.