# Southern Coal & Coke Company
## *v.* Swinney, *pro ami.*

*Suit for Damages for Personal Injury to Employee.*

(Decided Jan. 15th, 1907.   42 So. Rep. 808.)

1. *Master and Servant; Injury to Servant.*—An employee in a coal
   mine became sick from bad air and quit his work before the
   end of the day. While going out, he met the superintendent
   of the mine, who stopped him to inquire why he was quitting
   his work. He was injured at this point and at that time. Held,
   that the injury occurred during the course of his employment.

[Southern Coal & Coke Company v. Swinney, pro ami.]

2. *Same; Contributory Negligence.*—An employee of a coal mine left the mine by the usual and customary way, and under no emergency. Held, that he was not guilty of contributory negligence in going out by the route taken, though there was another way through which he could have passed in safety.

3. *Same; Assumption of Risk.*—An employee going out of a mine at an earlier hour than usual on account of sickness, by the usual route travelled, assumes merely the ordinary risk incident thereto, but does not assume the risk of the master's negligence.

4. *Trial; Instruction; Effect of Evidence.*—A charge that there is no evidence of a defect in the defendant's appliances, and that under the evidence plaintiff's injuries were due to an accident for which defendant is not responsible, invades the province of the jury and is properly refused.

5. *Master and Servant; Injury to Employee; Contributory Negligence; Emergency.*—The rule being that in case of emergency and peril one is not held to that cool and deliberate exercise of judgment in conserving his safety that he would be held to under ordinary circumstances, it cannot be said, as a matter of law, that an employee, who was injured while going out of the mine along a haulage way, by a car which jumped the track, was guilty of contributory negligence in running to "a turnout", rather than to one of the "dog-holes" in the sides of the wall, even if such turnout was a less safe place.

6. *Trial; Instruction; Incomplete Request.*—A charge which is incomplete and unintelligible, is properly refused.

7. *Master and Servant; Negligence; Proximate Cause; Evidence.*—Where the evidence showed that latches in the switch where the accident occurred, were unsafe on a slope, that they were at the time loose and could be thrown by a car passing over the switch so as to change the switch and derail trailing cars, and that immediately after the accident the latches were repaired, it was sufficient to authorize the jury to infer that the derailment causing the accident was the result of a defect in the switch.

8. *Appeal; Harmless Error; Instruction.*—It is not reversible error to give a charge correctly stating the law, though such charge be abstract or argumentative.

9. *Master and Servant; Injury to Employee; Negligence; Evidence of Knowledge.*—The evidence tending to show that the condition of the switch was the same at all such times, it was competent to prove accidents or wrecks at the same place shortly before the injury as tending to show knowledge of a defect in the switch on the part of the master.

10. *Trial; Reception of Evidence; Waiver.*—The answer being responsive to the question and no objection having been inter-

posed to the question, a motion to exclude evidence on the ground of irrelevancy or immateriality comes too late.

11. *Same; Objection by Party Eliciting Evidence.*—The party who draws out evidence on cross examination, may not move to exclude such evidence.

12. *Evidence; Experts; Examination.*—A question to an expert concerning the latches in a switch where the injury occurred, "State whether or not these latches are safe on main slopes"; and the expert's answer thereto "I did not take them to be safe", was not open to the objection of calling for and containing a conclusion; it called for and gave the expert's opinion.

13. *Same; Conclusion of Witness.*—Evidence of a witness that he did not see what plaintiff was doing at the moment of the accident but from his position afterwards, he must have remained sitting, is not a statement of a fact and is a mere conclusion.

14. *Appeal; Review; Refusal of New Trial; Weight of Evidence.*—The refusal of the trial court to grant a new trial, motion for which is based on the ground that the verdict was against the evidence, will not be disturbed on appeal, where there is evidence tending to support the verdict.

APPEAL from Shelby Circuit Court.

Heard before Hon. JOHN PELHAM.

Action by J. E. Swinney, by next friend, against the Southern Coal & Coke Company. Judgment for plaintiff. Defendant appeals. Affirmed.

This was an action for damages for personal injuries to an employe while engaged in the business of the employer, mining coal. The third count is drawn under subdivision 1 of the employer's liability act, and the negligence charged is that a switch in the track upon which said car was running at the time of derailment, at or near the point of said derailment, was defective, so as to cause said car to be derailed as aforesaid. Demurrers were interposed to this count, and overruled; but it is not necessary here to set them out, as they are not noticed in the opinion.

The defendant interposed several pleas of contributory negligence, the first of which is No. 4, and counts upon the negligence of the plaintiff, who, being engaged as a miner to dig coal in No. 5 west turnout, in defendant's mine, quitted his place at which he had been as-

signed to work, and negligently proceeded out of the mine along the main haulage road therein, and was struck by a train of cars which accidentally jumped the track. Plea 5 counts on the negligence of the plaintiff in quitting the place he had been assigned to work, and proceeding out of the mine along the main haulage way before the time when the miners usually left the mine, and at a time when they were not reasonably expected by those operating the tram cars to pass along that way. Plea 6 counts on the negligence of plaintiff in quitting his place of work and leaving the mine by the main haulage way. It alleges that along said haulage way the defendant had dug or caused to be dug holes, into which persons entered so as to let the cars pass, and that plain tiff at the time of the accident negligently failed to place himself in one of these dog holes, and in consequence was struck by the string of cars. Plea 7 counts on plaintiff's negligence in quitting his place of duty, and alleges that he went out along the main haulage way, and, meeting the superintendent of the mine at the mouth of No. 2 west turnout, he placed himself in the center of a track leading from the main haulage way into No. 2 west turnout, and negligently loitered there, instead of proceeding out of the mine or returning to his duty. Plea 8 alleges negligence on the part of the plaintiff, in that he quit his place of work, and proceeded out of the mine as far as No. 2 west turnout, where he met the superintendent, and where he stopped and took his seat in the center of a side track leading from No. 2 west turnout to the main haulage way, where a trip of cars on the main track coming down into the mine jumped the track about 40 feet away from him, and the plaintiff negligently remained sitting on the track until he was struck by the derailed cars. Plea 9 is the same as 8, except that it alleges that plaintiff negligently failed to get out of the way of the trip of cars. Plea 10 is practically the same as plea 8, and alleges that plaintiff negligently remained sitting or loitering about three or four minutes, when, if he had proceeded on his journey out of the mine, he would have had time to have switched off into any of the dog holes

[Southern Coal & Coke Company v. Swinney, pro ami.]

provided along the main haulage way. Pleas 11 and 12 are not set out.

The evidence on which the plaintiff relied to support his case under the third count is sufficiently stated in the opinion, as is the evidence relating to contributory negligence.

At the conclusion of the evidence, the defendant requested the following written charges, which were refused: "(4) I charge the jury that, if you believe the evidence in this case, the plaintiff at the time the accident happened was not acting within the line of his duty, and that the defendant in that event owed him no duty other than the duty not to injure him wantonly, intentionally, or recklessly. (5) If the jury find from the evidence that the plaintiff was employed by the defendant to dig coal in No. 5 west turnout in its mines at Glen Carbon, and that he had quit his place of work and proceeded out of the mine along the main haulage way before the miners were accustomed to leave the mine, and got as far as No. 2 west turnout, and there stopped and engaged in conversation for ten minutes, more or less, with the defendant's mine foreman, then during the time he stopped at said place he was a mere volunteer, performing service for and on his own behalf, and not on behalf of the defendant, and your verdict must be for the defendant. (6) The court charges the jury that there was no evidence in this case of any defect of the ways, works, and machinery of the defendant at the time of the accident to the plaintiff, and you must not presume anything. (7) I charge the jury that under the evidence in this case the plaintiff's injuries were due to an accident for which the defendant is not responsible, and there can be no recovery. (8) I charge the jury that if ,from the evidence, you believe that the defendant had provided dog holes or safety places for the use of the miners along the main haulage way in its mines, and that the plaintiff, instead of taking one of such dog holes for safety places when he heard the trip of cars coming down the track, took a more dangerous place by standing in No. 2 west turnout, near the main line of defendant's track, he then assumed the risk incident to the derailment of the defendant's cars on its

track. (9) I charge the jury that if the plaintiff when he proceeded out of the defendant's mine at an unusual hour, when there was apparent danger and risk incident to waking along the main haulage way of the defendant's mine, thereby electing voluntarily to encounter them, and was injured by a train of cars coming down the defendant's track while standing in a position in close proximity thereto, then I charge the jury that he cannot for such accident maintain an action against the defendant. (10) If the jury find from the evidence that the plaintiff was employed by the defendant to dig coal in No. 5 west turnout in its mines, and that he quit his work and proceeded out of the mine at an unusual hour to that in which the miners were accustomed to go out of the mine, and that he proceeded out of the mine along the main haulage way along which trains of cars were being operated, and if you further find that along this haulage way the defendant had provided dog holes or safety ways for the men to stand so that the cars might pass, and if you further find that the plaintiff, instead of going into one of these safety places when he heard the trip of cars coming down the track, remained in No. 2 west turnout, where there were side tracks leading to the main line, a place obviously more dangerous, then I charge you that he contributed to his own injury, and your verdict must be for the defendant. (11) If the jury believe from the evidence that the plaintiff was employed by the defendant to dig coal in No. 5 west turnout in its mines, and that he quit his place of work and proceeded out of the defendant's mine at an unusual hour for the miners thereof so to do, and if you find from the evidence that there was an escape way provided for the miners in said mine, which could have been used by the plaintiff, which was a safer way for him to have gone out at than the main haulage way, and if you find that he elected to take the main haulage way out of the mine, then you must find for the defendant. (12) I charge that if you believe, from the evidence, that the safe place for the plaintiff to have stood as the defendant's train of cars passed by him in its mine, but the plaintiff stood at another and more dangerous place when he could have stood else-

where along the main haulage way of the defendant's mine, and if you believe that his standing in a more dangerous place contributed to his injury, your verdict must be for the defendant."

The plaintiff requested the court to give the following written charges, to the giving of which the defendant excepted: "(1) It is not required of plaintiff that he should have acted with unusual and more than ordinary prudence, either in going out of the mine or in taking care of his own safety. (2) To make the plaintiff guilty of negligence, the jury must be reasonably satisfied from the evidence that he did something which a reasonably prudent man, acting with reasonable prudence, would not have done under the same circumstances, or that he failed to do something which a reasonably prudent man, acting with reasonable prudence, would have done under the same circumstances. (3) While the jury cannot guess or surmise, the jury are entitled to draw all reasonably inferences from the facts in evidence. (4) In determining whether or not the switch was defective, the jury have the right to weigh all the evidence in the light of their common knowledge, common sense, and common experience. (5) In order to recover a verdict, it is not necessary that the plaintiff prove that he suffered all the damages claimed in the third count. (6) A servant ordinarily has the right to rely on the master having exercised due care to have the ways, works, machinery, or plant in a reasonably safe condition. (7) If the jury find for the plaintiff, they have no right to withhold from the amount of their verdict a single dollar to which, under the evidence and charge of the court, the jury may be reasonably satisfied the plaintiff is entitled. (8) In estimating the amount of damages, if the jury find for the plaintiff, the jury must consider the evidence, if any, tending to show damages, if any, which plaintiff may reasonably be expected to suffer in the future as a proximate result of the negligence complained of, as well as the damages, if any, which the jury may be reasonably satisfied from the evidence plaintiff has suffered in the past as a proximate result of the negligence complained of; provided, that plaintiff cannot recover any damages not

claimed in the complaint. (9) A servant or employe does not ordinarily assume any of the risks of the business which are brought about by the negligence of the master, or by the negligence of those to whom the master has intrusted the duty of seeing that the ways, works, machinery, or plant were in proper condition. (10) It is the duty of the employer to use due care and diligence to see that its ways, works, machinery, and plant, including a switch in use, if any, are in proper condition; and ordinarily the employe has a right to rely on the presumption that his employer has performed this duty, and that the ways, works, machinery, and plant are in proper condition."

There was verdict and judgment for the plaintiff in the sum of $2,800.

JOHN F. MARTIN, and W. I. GRUBB, for appellant.— The court erred in refusing to charge the jury that at the time of the accident plaintiff's intestate was not acting within the line and scope of his duty and that the defendant owed plaintiff's intestate no duty other than not to injure him wantonly or intentionally. The court also erred in refusing to charge at the time of the accident plaintiff's intestate was a mere volunteer and not engaged in the employment of defendant.—*Wilson v. L. & N. R. R. Co.*, 85 Ala. 273; *A. G. S. Ry. Co. v. Hall*, 105 Ala. 599; *Mary Lee C. & R. Co. v. Chambliss*, 97 Ala. 131; *Collier v. Coggans*, 103 L. R. A. 281; *McDaniel v. H. A. & B. Ry. Co.*, 90 Ala. 64; *Warden v. L. & N. R. R. Co.*, 94 Ala. 277. The law does not require of defendant to use the latest appliances but only those which are reasonably adapted for the purposes for which they are used.—*Mary Lee C. & R. Co., supra: Seaboard Mfg. Co. v. Woodson*, 94 Ala. 143; *Wilson v. L. & N. R. R. Co., supra; Smoot v. M. & M. Ry. Co.*, 67 Ala. 20. It is submitted on these authorities that plaintiff failed to make out his case under the 3rd count. The withdrawal of the other counts including the 1st operated to take them out of the case and the part adopted in the 3rd count from the 1st count cannot, therefore, be looked to in aid of the 3rd count.—*Bir. Ry. L. & P. Co. v. Allen*, 99 Ala. 365. The court erred in permit-

ting the testimony of the two wrecks within a month or two previous to the accident, and the details thereof.— *Bir. U. Ry. Co. v. Alexander*, 93 Ala. 137; *Schley v. L. & N. R. R. Co.*, 100 Ala. 388; *M. & A. of Birm. v. Starr*, 112 Ala. 107.

BOWMAN, HARSH & BEDDOW, for appellee.—The various grounds of demurrer to the complaint were not well taken.—*Bear Creek Mill Co. v. Parker*, 134 Ala. 293; *L. & N. R. R. Co. v. Mothershed*, 12 Suth. 1215; *Mary Lee C. & Ry. Co. v. Chambliss*, 97 Ala. 174; *A. G. S. R. R. Co. v. Davis*, 119 Ala. 572. Upon the recitals in the bill of exceptions the court cannot consider the motion for a new trial.—*McDonald v. Ala. Mid. Ry. Co.*, 123 Ala. 229; *Richter v. Kootman*, 131 Ala. 399; *Bessemer L. & I. Co. v. DuBose*, 125 Ala. 446. Charges 1, 2 and 3 were properly refused.—*Bessemer L. Co. v. Tillman*, 139 Ala. 462. Under the facts in this case the plaintiff was in the employment of defendant and defendant owed him ordinary care.—*Bir. Rolling Mill Co. v. Rockhold*, in MS.

DOWDELL, J.—This is an action by the plaintiff to recover damages for personal injuries received in a coal mine while in the employment of the defendant in mining coal. The complaint contained four counts, to which demurrers were interposed and overruled. The defendant thereupon filed a number of pleas, consisting of the plea of not guilty and special pleas of contributory negligence. Demurrers were sustained to the eleventh and twelfth special pleas, and, issue being joined on the other pleas, a verdict was rendered in favor of the plaintiff. Upon the conclusion of the evidence the court, at the request of the defendant in writing, gave the general charge in favor of the defendant on all of the counts of the complaint except the third count. This latter count was predicated under the employer's liability statute, on a defective switch in defendant's railroad track in the mine, causing a car to be derailed and thrown against the plaintiff, whereby he was injured as charged in the complaint.

Though the rulings of the court on the demurrers to the complaint and pleas are assigned as error, these assignments are not insisted on by counsel in argument, and therefore will not be considered here; the same being regarded as abandoned.

The first question insisted on by counsel for appellant is one raised by requested instructions to the jury; the insistence being that, the plaintiff at the time of his injury having quit the work to which he was assigned, he was not in the employment of the defendant. The evidence shows that the plaintiff was at work engaged in mining coal at what was known as "No. 5 West Turnout" in defendant's mine on the day of the injury, and plaintiff's testimony was that about 3 o'clock in the afternoon he became sick from bad air caused by blasting in the mine during the day, and quit his work and was leaving the mine by the "haulage way" along the main slope out, when he came to what was known as "No. 2 West Turnout," where the superintendent in charge of the mine and of the employment of the plaintiff stopped plaintiff to inquire of him why he was quitting his work, and became engaged in a conversation lasting about 10 minutes, and it was during this time and at this place that plaintiff was injured by a "trip of cars" descending the slope into the mine, which was derailed and thrown against the plaintiff. The defendant's evidence tended to show that the superintendent of defendant simply asked the plaintiff why he was quitting his work at that time, and that the plaintiff voluntarily loitered at that place, being under no duty to the defendant to remain there, when, if he had proceeded on his way out of the mine, he would have gotten out before the "trip of cars" made the descent, and thereby avoided the accident. If the plaintiff's testimony is to be believed, when he was stopped and engaged in conversation by his superintendent, as testified to by plaintiff, the relation of master and servant during this time was not terminated by such detention or delay of the plaintiff. He was assigned to work at No. 5 west turnout by the superintendent. By the same authority he was detained at No. 2 west turnout, where the injury occurred. The relation between the defendant and

[Southern Coal & Coke Company v. Swinney, pro ami.]

plaintiff which existed by reason of the employment continued to exist after plaintiff ceased to work until he had left the mine, or had a reasonable time to do so without interruption by no fault of his own. See *Birmingham Rolling Mill Co. v. Rockhold,* 143 Ala. 115, 42 South. 96. Charges 4 and 5, requested by the defendant, besides being otherwise faulty, were opposed to the views above expressed, and were properly refused. The cases of *Wilson v. L. & N. R. R. Co.,* 85 Ala. 269, 4 South. 701, and *Alabama G. S. Ry. Co. v. Hall,* 105 Ala. 599, 17 South. 176, as well as other cases of ours cited and relied on by counsel for appellant, are not in point; the facts in those cases being different from the facts in the case at bar.

While there was an escapeway out of the mine which could be used in cases of emergency, and through which plaintiff might have passed on the occasion with safety upon quitting his work, the evidence showed that the usual and customary way of the miners going out of the mine was through the "haulage way" in the main slope, the route traveled by the plaintiff at the time of the injury. This being true, it cannot be said that the plaintiff, in passing out through the "haulage way," was wanting in the exercise of that ordinary prudence and care which would impute negligence. The plaintiff, in passing out through the "haulage way" in the main slope, assumed the ordinary risks incident thereto in like manner as he assumed the ordinary risks incident to his employment in the digging of coal; but he did not assume the risk of the negligence of the defendant. The defendant's requested instructions to the jury numbered 9 and 11 were opposed to these views, and were properly refused.

Charges 6 and 7, requested by the defendant, were an invasion of the province of the jury, and for that reason, if no other, were properly refused.

Charge 8, requested by the defendant, was faulty in several respects, and especially in putting upon the plaintiff an assumption of risk that might embrace that of the negligence of the defendant. The law is well settled, that, in cases of great emergency and peril, a per-

son is not held to that cool and deliberate exercise of judgment in conserving his safety that he would be under ordinary circumstances.

The evidence showed that the plaintiff was hurt, not by cars upon the track, but by the cars after they were derailed. The plaintiff, so far as the evidence shows, was in a safe place from the passing of the cars over the track, and would have been uninjured, but for the derailment. His extreme peril and danger arose when the trip of cars descending the main slope jumped the track in close proximity to the plaintiff. His failure under these circumstances to hunt for one of the "dog holes," which had been left along the sides of the main slope at a distance of about 30 feet apart, cannot be charged as contributory negligence on the part of the plaintiff, when in fact he did run to save himself, although the place he sought was less secure than the "dog holes." Charge 10, as requested by the defendant, was opposed to these views, besides being faulty in assuming that No. 2 west turnout, where the plaintiff ran to escape, was obviously more dangerous than the "dog hole." It was, therefore, properly refused. Charge No. 12, requested by the defendant, besides being incomplete, was unintelligible, and for that reason properly refused.

The third count of the complaint counted on a defective switch. It is insisted by counsel for appellant that there was no evidence of any defect in the switch, and that, therefore, the defendant was entitled to the general affirmative charge under this count. There was evidence tending to show that the latches used in the switch were unsafe on a slope, and that the same were at the time loose, and could be thrown by a car passing over the track, so as to change the switch, thereby derailing trailing cars. There was also evidence tending to show that immediately after the accident in question the latches were repaired. Under this evidence, it was open to the jury to infer that the derailment of the cars was the result of a defect in the switch, and therefore it was a question to be left to the jury.

We find no error in the giving of the charges requested by the plaintiff, as each of the charges given correctly

states the law.   The giving of a charge which is abstract
or argumentative, when it correctly states the law, will
not constitute reversible error.

The sixth assignment of error, insisted on by counsel,
relates to the introduction of the evidence.   The witness
Nabers was asked by the plaintiff with reference to
other accidents or wrecks at the same place in defend-
ant's mine before the accident in question, when counsel
for defendant interposed an objection, accompanied by
a qualification, "unless he (witness) will state what
time."   The court thereupon adopted the suggestion of
counsel and said:   "Bring it down to a certain time
within a few weeks," and the question was then asked
by counsel for plaintiff, "Well, within a few weeks?"
To this question the defendant objected upon the ground
"that the same was irrelevant, immaterial, illegal, and
incompetent," which objection the court overruled.  And
the witness answered:  "It was in a few weeks.  It had
been a month or two."   It was competent, relevant, and
material to show that accidents or wrecks had occurred
at the same place within a short time previous to the
accident in question, as tending to show knowledge on
the part of the defendant of the defective condition of
the switch at that place.   There is evidence tending to
show, and from which the jury were authorized to in-
fer, that the condition of the switch as to the loose
latches was the same at the time of the accident as at
the time of the two previous wrecks.   After the further
examination by the plaintiff of the witness without ob-
jection in regard to two other wrecks at the same place,
in answer to a question not objected to, the witness
stated:   "I said two.   There were two wrecks within
two months before this one that I know of."   The de-
fendant moved to exclude this statement on the ground
that it was irrelevant, immaterial, and incompetent evi-
dence.   If the grounds stated had been good, no objec-
tion having been made to the question, and the answer
being responsive, the motion to exclude came too late.
The   defendant   then   cross-examined   the   witness   at
length, and at the conclusion of his cross-examination the
defendant "moved to exclude all the evidence relative to
this accident, which defendant had asked about."   It

27

was not proper for defendant to speculate with the witness on a cross-examination, and then move to exclude the evidence he had drawn out by his cross-examination.

The witness John A. Durden, who qualified as an expert, was asked by the plaintiff upon examination and rebuttal this question: "State whether or not these latches are safe on main slope?" The latches referred to were those on the switch, where the accident and derailment in question occurred. The question was objected to by the defendant upon the grounds, that it called for illegal and incompetent testimony. The witness answered: "I did not take them to be safe." The insistence here is that the question called for a conclusion, and that, the answer was a conclusion of the witness. This insistence is not tenable. The witness was examined as an expert, and as such only stated his opinion on the facts as to whether the latches were safe ones on the main slope.

There is no error in excluding the statement of the witness Keller, on the motion of the plaintiff, that he (witness) "did not see what the plaintiff did at this particular moment, but, from his position afterwards, he must have remained sitting." This was clearly but an opinion or conclusion of the witness, and not the statement of the fact that the plaintiff remained sitting.

We have considered all questions insisted upon in argument by appellant, except the one relating to the motion for a new trial. The insistence in this respect is that the verdict was, contrary to the weight of the evidence, and that the court erred in not granting a new trial on this ground, and, furthermore, that the verdict was excessive. We are not prepared to say that the verdict was excessive, as there was evidence tending to show that the injury received might result in a permanent disability. There was evidence to support the verdict in favor of the plaintiff, and, under the rule laid down in *Cobb v. Malone*, 92 Ala. 630, 9 South. 738, we are not prepared to say that the trial court erred in overruling the motion for a new trial.

Finding no reversible error in the record, the judgment appealed from will be affirmed.

Affirmed.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.