MELVIN T. MAY, ADMINISTRATOR OF THE ESTATE OF EVA REBECCA MAY BUTNER, DECEASED v. SOUTHERN RAILWAY COMPANY, W. B. STANLEY, CLARENCE C. KINGSBURY, J. M. FORRESTER, G. S. STAFFORD AND J. W. SCOTT.

(Filed 6 March 1963.)

**1. Automobiles § 10—**

If a motorist is traveling within the legal speed limit, his inability to stop within the range of his headlights is not negligence *per se* but is only evidence of negligence to be considered with the other evidence in the case. G.S. 20-141(b).

**2. Master and Servant § 32;   Railroads § 5—**

Where the jury finds that the railroad company's employees were not guilty of negligence in the particulars alleged with respect to warning plaintiff's intestate of the backing of a box car over the crossing, such finding exonerates the railroad company sought to be held liable under the doctrine of *respondeat superior*, since any verdict against it must be predicated upon the negligence of its employees or agents.

**3. Railroads § 5—**

The fact that a railroad company permits its crossing to become obstructed with vegetation or other objects does not constitute actionable negligence within itself, since such obstacles relate solely to whether the crossing was unusually dangerous so as to require the train crew to give warning of the approach of its train.

**4. Appeal and Error § 2—**

> The Supreme Court will take notice *ex mero motu* of the failure of the complaint to state a cause of action.

APPEAL by plaintiff from *Johnston, J.,* February 5, 1962 Civil Term of GUILFORD, Greensboro Division. This appeal was docketed in the Supreme Court as Case No. 605 and argued at the Fall Term 1962.

Action for wrongful death. Plaintiff's intestate was killed about 8:50 p.m. on September 4, 1958 when the 1955 Ford automobile she was driving collided with the lead end of a boxcar which defendants were backing over an industrial spur track at a grade crossing at Raleigh Street in the City of Greensboro. The defendants are the Southern Railway Company and its employees, the crew who were operating a switch engine and two boxcars. J. L. Forrester was the engineer; C. C. Kingsbury, fireman; G. S. Stafford, conductor; J. W. Scott and W. B. Stanley, brakeman and flagman.

Raleigh Street is paved, forty feet wide, and runs approximately north and south for a distance of three quarters of a mile between East Market Street and Bessemer Avenue. It is a heavily traveled street through an industrial area. About one quarter of a mile north of East Market Street, two spur tracks of the defendant Southern Railway Company cross Raleigh Street at an angle of approximately forty-five degrees in a northwesterly and southeasterly direction. In the center of the street they are sixteen feet apart. The street is fairly level both north and south of the crossing and one could see from Bessemer Street to East Market Street.

The P. Lorillard Tobacco Company is within one quarter of a mile of this crossing. Plaintiff's intestate, Mrs. Butner, was a twenty-one year old woman who had been employed at P. Lorillard Tobacco Company since August 29, 1957. She worked on the second shift which began at 4:30 p.m. She, along with the other employees on that shift, had a thirty-minute lunch period beginning at 8:45 p.m. At the time of her death Mrs. Butner and another employee, Stella Johnson, were traveling north on Raleigh Street en route to a restaurant on Bessemer Avenue. Miss Johnson was seriously injured at the time Mrs. Butner was killed. She testified that she could recall none of the events of the day except that they were going to lunch.

The night was clear but dark. There were street lights approximately four hundred feet south of the crossing and five hundred feet north of it. There were no lights or signals of any kind at the crossing.

On September 4, 1958, the following ordinance of the City of Greensboro was in full force and effect:

> Chapter 9 (Railroads) Section 9.7: "Rolling stock not to be backed over unprotected crossing unless preceded by flagman.— No railroad, nor any of its agents or employees, shall push or back any train, locomotive or other rolling stock over any grade crossing in the city, which is unprotected at the time by a crossing watchman or flagman on duty, unless it be preceded in the daytime by a flagman on foot carrying a flag, and in the nighttime by a flagman on foot carrying a lighted lantern; and it shall be the duty of the railroad and of every such flagman to give timely warning to pedestrians and persons in vehicles of the approaching rolling stock. . ."

Plaintiff alleged that because of the heavy traffic on Raleigh Street, the absence of lights at the crossing, the angle at which the track crossed the street, and vegetation to the east of Raleigh Street which obscured the view of a train approaching from the east, this was an unusually hazardous crossing at night; that notwithstanding, the defendants, suddenly and without any signal or warning of its approach, pushed an unlighted boxcar from the east directly in front of Mrs. Butner's approaching automobile, thereby proximately causing her death. Plaintiff further alleged that the backing train was not preceded by any flagman as required by the quoted ordinance; that the Railway Company had negligently permitted "the space between Raleigh Street and its railroad track to grow up so thickly with trees, bushes, weeds and permitted an earth embankment to remain on its right of way on the east side of Raleigh Street at said grade crossing"; that plaintiff's intestate could not see the unlighted boxcar as it was pushed into the street; and that under these circumstances the failure to give any warning lulled intestate into the belief that no train was near and caused her to attempt to cross the track when she would not have done so had the defendants taken precautions commensurate with the danger of the crossing.

The defendants denied all the plaintiff's allegations of their negligence and plead the contributory negligence of plaintiff's intestate in bar of his right to recover.

No eye witnesses testified for plaintiff. George Campbell and Gordon Osborne, fellow employees who left the plant behind intestate, observed that the collision had occurred when they topped a rise 300 to 400 feet from the crossing. At that time they saw no person at the scene, no lights on the train, and heard no bell. The first man they

saw came down the side of the track with a lantern from the direction of the engine.

After skidding approximately eight feet, the Butner car collided with the south side of the boxcar at the wheel section about four feet back from the edge. The right rear wheel was twenty-seven feet from the east curb; the right front wheel, twenty-one feet after the collision.

Plaintiff's evidence tended to show that east of Raleigh Street on the north side of the track was a thick stand of tall trees; on the south side, a bank, grown up in weeds, ran from fifty to one hundred feet parallel with the road. This bank, with the weeds and brush on it, was about two feet taller than the roof of a 1957 Ford station wagon sitting in the street.

The defendants' evidence tended to show these facts:

The train was backing towards the south crossing at a speed of two to four miles an hour. Its automatic bell was turned on and, in the opinion of the engineer, could have been heard from one and a half to two blocks away. The engineer was on the north side of the engine; the fireman, on the south. The headlight on the rear of the engine was on; there were no lights on the boxcars. The two boxcars being pushed by the engine were approximately fifty feet long and twelve to fourteen feet high. The cab of the engine was about fourteen feet high. Stafford and Scott, each with a lighted lantern, were in the crossing between the two tracks. Scott was in the middle of the street and Stafford a little to the northwest between the crossing and the engine. The deceased approached the crossing at thirty miles an hour. Stafford and Scott attempted to flag her down with their signal laterns, but she continued to approach at unabated speed. When she was from seventy-five to one hundred feet from the crossing and the train was approximately at the east curb line of the street they realized she was not going to stop. They signaled the engineer and ran to the west side of the street to avoid being run over. He stopped the train within three feet after getting the signal with the lead boxcar about twenty-seven feet into the intersection.

Immediately after the collision the conductor ran around the west end of the train, saw the condition of the occupants of the car, and left to call an ambulance before anyone else arrived. Stanley, the brakeman, left "to telephone the office." Scott went to the car and was there when Osborne and Campbell came. The engineer cut off the automatic bell, and he and the fireman walked down the south side of the track to the accident. The windows of the Butner car were up.

The morning after the accident, at the instance of the Railway

Company, a commercial photographer took pictures of the crossing and of the train. These pictures were introduced in evidence without limitation and indicate that the weeds along the east side of Raleigh Street were not high enough to cut off view of the train.

At the close of all the evidence the court allowed the motions of the defendants Stanley and Kingsbury for judgment as of nonsuit. Five issues were submitted to the jury and answered as follows:

1.  Was the plaintiff's intestate killed by the negligence of the defendant, J. M. Forrester, as alleged in the plaintiff's complaint? Answer: *NO*

2.  Was the plaintiff's intestate killed by the negligence of the defendants, G. S. Stafford and J. W. Scott, as alleged in the plaintiff's complaint?
    Answer: *NO*

3.  Was the plaintiff's intestate killed by the negligence of the defendant, Southern Railway Company, as alleged in the plaintiff's complaint?
    Answer: *YES*

4.  Did the plaintiff's intestate by her own negligence contribute to her death as alleged in the answer?
    Answer: *YES*

5.  What amount of damages, if any, is the plaintiff entitled to recover?
    Answer: *$6,500.00*

On this verdict the judge entered a judgment that the plaintiff recover nothing. The plaintiff appealed, assigning errors in the charge with reference to the third issue.

*Frazier and Frazier by H. Vernon Hart for plaintiff appellant.*
*McLendon, Brim, Holderness and Brooks by L. P. McLendon, Jr., for defendant appellees.*

SHARP, J. The jury having answered the issue of contributory negligence against the plaintiff, the defendants are entitled to a judgment unless there is error in the trial below entitling the plaintiff to a *venire de novo. Bullard v. Ross,* 205 N.C. 495, 171 S.E. 789.

There is error in the charge on the fourth issue which, nothing else-appearing, would entitle the plaintiff to a new trial. His Honor, in effect, charged the jury that if Mrs. Butner approached the crossing at a speed so great she could not stop her automobile within the range of her headlights, she would be guilty of negligence *per se*. There was

no evidence that she was exceeding the maximum speed prescribed by G.S. 20-141(b). Therefore, such speed would not have been negligence *per se* but only evidence to be considered along with the other facts in the case in determining whether she was guilty of contributory negligence. Chapter 1145, Session Laws of 1953.

However, to award plaintiff a new trial now would be a Pyrrhic victory. There was no error in the trial with reference to the first two issues and the plaintiff has assigned none. The judge correctly instructed the jury on the duty of the train crew to give reasonable and timely warning before backing an unlighted boxcar across a highway at night, and he thoroughly reviewed all the contentions of the plaintiff. Nevertheless, the jury exonerated the employees remaining in the case of any negligence.

When the servant is the actor, the employer cannot be called upon to respond in damages for his act which was not wrongfully or negligently committed. *Morrow v. R.R.*, 213 N.C. 127, 195 S.E. 383. When the master must be held, if at all, under the doctrine of *respondeat superior*, a verdict and judgment against plaintiff on the issue of negligence in an action against the servant bars a later action by the same plaintiff against the master. *Leary v. Land Bank*, 215 N.C. 501, 2 S.E. 2d 570; *Pinnix v. Griffin*, 221 N.C. 348, 20 S.E. 2d 366.

In this case the judge charged the jury that if they answered either of the first two issues YES they would answer the third issue YES, but if they answered the first two issues NO they would still consider the third issue because "a railroad company is required to use due care in maintaining its right of way so as not to obstruct the vision of persons approaching on a public street." Under this instruction the jury answered the third issue YES.

Since the judgment below was in favor of the defendant Railway Company it did not appeal. Hence the propriety of this instruction *as such* is not presented on this record and is not before us for consideration. *Jeffreys v. Burlington*, 256 N.C. 222, 123 S.E. 2d 500. It is noted, however, that there was no evidence that the vegetation complained of was on the Railroad's right of way. Vegetation along the side of the public road is not chargeable to the Railroad but, if such growth obscures the view of those approaching the track, it becomes the duty of the Railroad to use means commensurate with the danger created by that growth to warn the public of an approaching train. 74 C.J.S., Railroads, Section 722.

However, with the members of the train crew exonerated of any negligence, this question arises: Does the complaint allege any facts

upon which the Railroad may now be held independently liable? The answer is NO.

The substance of the allegations of the complaint with reference to the obstructions at the crossing are set out in the statement of facts. The purpose of these allegations was to establish the duty which the train crew owed intestate to warn her of the approaching train. If obstructions made a blind crossing, they were a vital factor in determining the duty which defendants owed her as well as in determining whether intestate herself was guilty of contributory negligence in going upon the tracks. However, "(o)bstructions in themselves have never been considered negligent, . . . but if they exist, and the railroad is aware of them, it is then incumbent on the railroad to take proper precautions to protect travelers who use the crossing and to warn them of the approach of trains." *Parrish v. R.R.*, 221 N.C. 292, 20 S.E. 2d 299; *Coltrain v. R.R.*, 216 N.C. 263, 4 S.E. 2d 853.

Permitting such obstacles on the right of way and near the crossing would not in itself constitute actionable negligence, and independently would not give rise to a cause of action. *Childress v. Lake Erie & W. R. Co.*, 182 Ind. 251, 105 N.E. 467. The cause of action depends upon whether or not the train crew gave the warning and took the precautions which an unusually dangerous crossing required. In this case the jury has said that they did.

When the complaint fails to state a cause of action, a defect appears upon the face of the record proper. On appeal, the Supreme Court will take notice of it and will *ex mero motu* dismiss the action. *Ice Cream Co. v. Ice Cream Co.*, 238 N.C. 317, 77 S.E. 2d 910; *Fuquay Springs v. Rowland*, 239 N.C. 299, 79 S.E. 2d 774; *Skinner v. Transformadora, S. A.*, 252 N.C. 320, 113 S.E. 2d 717.

This action is remanded to the Superior Court of Guilford County with instructions to enter a judgment on the first two issues decreeing that the plaintiff recover nothing of the individual defendants and dismissing the action against the Southern Railway Company.

Error and remanded.