199 So.2d 840

ALABAMA GREAT SOUTHERN RAILROAD COMPANY

v.

Virginia D. JOHNSTON, as Administratrix.

2 Div. 493.

Supreme Court of Alabama.

June 1, 1967.

Geo. E. Sledge, Greensboro, and Cabaniss, Johnston, Gardner & Clark, Birmingham, for appellant.

O. S. Burke, Greensboro, and Clement, Rosen, Hubbard & Waldrop, and Robt. B. Harwood, Jr., Tuscaloosa, for appellee.

MERRILL, Justice.

This is an appeal by defendant from a judgment on a verdict of $75,000.00 and from a judgment overruling defendant's motion for a new trial. The action was for the alleged wrongful death of plaintiff's intestate as a result of his driving an auto-

mobile into a moving train on a public crossing.

Defendant's demurrer to Counts Six and Seven was sustained but overruled as to Counts One, Two, Three, Four and Five. Plaintiff struck Count Two. The defendant pleaded in short by consent the general issue and contributory negligence to Counts One and Three, and the general issue to Counts Four and Five.

Each count of the complaint alleged that plaintiff's intestate, George Rufus Johnston, was driving an automobile on a public highway in Hale County at a point where the defendant's railroad tracks crossed said highway and that plaintiff's intestate was killed in a collision between the automobile he was driving and a train of the defendant.

In summary, Count One charged the defendant with negligence in so negligently operating the said locomotive with a train of cars attached as to cause the same to collide with the automobile plaintiff's intestate was driving.

Count Three of the complaint alleged that the defendant "negligently allowed its said right of way immediately adjacent to said crossing to grow up in trees, bushes, briars, weeds and vines as [sic] as to conceal said tracks and locomotive with trains of cars attached thereto being operated along and upon defendant's said tracks from the view of travelers upon said public highway at or near said point, or negligently caused or allowed its said right of way immediately adjacent to said crossing to grow up in trees, bushes, briars, weeds and vines so as to obstruct the view of travelers upon said public highway at or near said point of said tracks and of locomotives of trains of cars being operated along and upon defendant's said tracks at or near said crossing and plaintiff further avers that the defendant negligently allowed said trees, bushes, briars, weeds and vines to remain upon defendant's said right of way at said time and place;" and that as a proximate consequence of the negligence of the defendant

there was a collision between the automobile and the train and plaintiff's intestate was so injured that he died.

Counts Four and Five were in somewhat similar language to Count Three in that they both complained of alleged conduct in the allowance by the defendant of its right of way to grow up in trees, bushes, briars, weeds and vines as averred in Count Three, but in each of said Counts Four and Five the plaintiff characterized the alleged culpable conduct of defendant as wantonness.

Appellant assigns as error (Assignments 2, 6 and 10) the overruling of its demurrer to Count Three which, as already stated, charged negligence on the part of the defendant in negligently allowing its right of way immediately adjacent to the crossing to grow up in trees, bushes, briars, weeds and vines so as to obstruct the view of travelers.

Some states have statutes requiring a railroad to clear its right of way of trees and shrubs for a specified distance on either side of a crossing, but our legislature has been silent on the subject. There is a split of authority on the question of whether unnecessary obstructions on the right of way, such as trees and shrubs, are actionable, and this court has never specifically decided the question. The only two Alabama cases we have found dealing with the subject are Atlantic Coast Line R. Co. v. Carter, 214 Ala. 252, 107 So. 218, and Curry v. Southern Ry. Co., 148 Ala. 57, 42 So. 447.

The last cited case is not apt authority because the rule in Alabama which prevails as to livestock, does not obtain as to human beings. Central of Georgia Ry. Co. v. Martin, 138 Ala. 531, 544, 36 So. 426, 430.

In the *Carter* case, supra, the collision was at a private, not a public, crossing. This court said, in part: "There are cases holding—properly, no doubt—that the fact that weeds and bushes are allowed by a railroad company to grow upon its right of way so as to obstruct a view of the track at the crossing of a public highway may be con-

sidered in determining the question of negligence in the operation of trains at such crossing, but not as actionable negligence per se." This court cited Cowles v. New York, New Haven & Hartford R. Co., 80 Conn. 48, 66 A. 1020, 12 L.R.A.,N.S., 1067, 10 Ann.Cas. 481, in support of the quoted statement. We quote two excerpts from the *Cowles* case:

"* * * We think that the mere neglect to cut down such trees, whether causeless or not, whether they could be cut down with slight trouble and expense or not, is not, in the absence of any statute requiring railroad companies to keep their right of way free from unnecessary obstructions to a view of their tracks and trains by persons using an adjacent highway, in itself actionable negligence. * * *

* * * * * *

"* * * We have never before had occasion to discuss this question, and must therefore treat it as an open one. For the reasons above suggested, we are satisfied that, while trees growing upon land adjacent to the highway, including land owned by the railroad company, which substantially obstruct the view of a traveler approaching the grade crossing, is clearly one of the circumstances, to be considered in determining whether the railroad company exercised ordinary care in the operation of its cars at a particular time, yet the mere neglect of the company to cut down trees on its own land although proper to be considered with all the surrounding circumstances affecting the care required at that time is not in itself a violation of any legal duty the company owes to a passing traveler (unless so made by statute), and is not therefore in the absence of any other negligence a neglect which constitutes actionable negligence."

Other cases reaching the same conclusion are Rachal v. Texas & Pacific Ry. Co. (La. App.1952) 61 So.2d 525; Childress v. Lake Erie & W. R. Co., 182 Ind. 251, 105 N.E. 467, and May v. Southern Ry. Co., 259 N.C. 43, 44, 129 S.E.2d 624.

■ We think the better rule is that unnecessary obstructions such as trees, bushes, shrubs and tall grass, growing on a railroad right of way, which obstruct the view of a traveler approaching a grade crossing, do not constitute actionable negligence; but such circumstances may be considered in determining whether the railroad company exercised ordinary care in the operation of its train or rolling stock at a particular time.

It, therefore, follows that the trial court erred in overruling the demurrer which raised the objection to which we have written.

■ But we do not hold the error of the trial court to be reversible error. The overruling of a demurrer to one count of the complaint, even though the count is demurrable, where there is another sufficient count in the same complaint presenting the same claim and involving the same evidence, is error without injury where there is a general verdict referable to either count. Central Aviation Co. v. Perkinson, 269 Ala. 197, 112 So.2d 326; Hamilton v. Browning, 257 Ala. 72, 57 So.2d 530; Brush v. Roundtree, 249 Ala. 567, 32 So.2d 246.

■ Here, Count One charged negligence in the operation of the train, and the evidence of the plant life obstructions was admissible under that count as one of the circumstances to be considered in determining whether the appellant operated its train with due care at the time and place involved. The general verdict could be referred to Count One which presented the same claim, involved the same evidence and claimed the same damages.

■ Assignments of error 3, 7 and 11 raise the same question as to Count Four that we have discussed as to Count Three. We hold that the trial court erred in overruling the demurrer to Count Four, which

charged wantonness. But no reversible error was committed because the same claim and the same evidence given under Count Four could have been given and applied to Count Five, which charged wantonness in the operation of the train and which we hold to have been sufficient.

Assignment 41 charges error in the refusal of the trial court to grant the motion for a mistrial. After the jury had been selected and each side had announced it was satisfied with the jury, the trial court sent the jury to the jury room in order to hear the argument on the motion. Appellant contended there and here that a mistrial or a continuance should have been granted because among the jurors summoned for the week were a son, a brother and four others who were kinsmen, within the prohibited degree of consanguinity or affinity, of either the plaintiff or the decedent.

Each of these people acknowledged their kinship and the court sustained the challenge to each of them. We hold that the trial court did not err in refusing to grant the motion for a new trial.

Assignments of error 42 through 48 are concerned with rulings of the court which overruled objections by appellant to questions propounded to plaintiff's witness Vaughan on direct examination. The witness was permitted to state, over objection, that some six weeks before the collision here in question, he had collided with the engine of a train at the same crossing, that the next day he talked with one Sam Houston, Jr., a claim agent of defendant; that he told Houston "that there was Johnson grass and weeds along the right-of-way and Mulberry trees and some other kind of scrubby trees that were so tall you couldn't see the train until you got into the crossing."

The trial court limited the questions to show knowledge of the railroad of the conditions that existed at the crossing on May 5, 1965, the date of Vaughan's collision with the train. We agree with the trial court.

In Birmingham Electric Co. v. Lawson, 239 Ala. 236, 194 So. 659, this court held that evidence of previous wrecks of other vehicles was admissible as going to show notice to the defendant of the dangerous circumstances at a certain place. Similar holdings are Southern Coal & Coke Co. v. Swinney, 149 Ala. 405, 42 So. 808; Southern Ry. Co. v. Posey, 124 Ala. 486, 26 So. 914; Louisville & N. R. Co. v. Hall, 91 Ala. 112, 8 So. 371.

An annotation on the admissibility of prior accidents or injuries at the same place states the following in 70 A.L.R.2d 179, § 4, and cites cases from 36 jurisdictions, including Alabama:

"Proof of a prior similar accident at the place of the accident in suit, shown to have arisen from the same defect claimed to have caused the later accident, has generally been regarded as admissible as having some relevancy on the issue of the defendant's notice of the existence of the defect, at least where the accidents were of such a nature that defendant must have had actual or implied knowledge of the prior occurrence."

Appellant concedes the principle but argues that the conditions were so dissimilar that the evidence was not admissible. Vaughan's accident was in the daytime, this one was at night. He was much closer to the train because he ran into the engine while the victim here hit near the center of the train. We do not think these differences were sufficient to justify the sustaining of objections to the questions.

Appellant next argues that the court erred in refusing to give the written requested affirmative charges requested by it. That raises the question of the sufficiency of the evidence.

This collision occurred at Powers Switch in Hale County between 11:00 P.M. and midnight, June 19, 1966. Plaintiff's intestate was driving an automobile in a generally westerly direction along Hale County Road No. 46. The automobile struck

the 88th railroad car of a northbound freight train which was about two miles long, counting 100 cars to a mile. The train was going about 50 miles per hour and no one on the train knew that an accident happened until they were notified at Green Pond in Bibb County. An inspection revealed some glass, some damage done to the railroad car and the deceased's wallet was hanging over the truck side.

The road running west toward the crossing, the direction deceased was traveling, was asphalt and it curved to the driver's right. There was a highway sign on the right of the road and a luminous cross-buck sign on the left near the tracks and a stop sign on the right near the crossing. Skid marks extended back east 90 feet from the crossing and showed that the automobile was on the left side of the center line of the highway while the skid marks were being made. One of the State Troopers who investigated the accident stated that he had an unobstructed view of the crossing for 300 to 350 feet and that he saw the signs. Based upon his experience and training as a State Trooper, the skid marks, the impact and the condition of the vehicle, he estimated the speed of the automobile at 80 miles per hour.

A State Toxicologist testified that he analyzed some blood shown by the testimony to have been taken from the deceased and found that the degree of intoxication was .20 per cent, which meant that a person with that much alcohol in his blood would be "sloppy drunk."

In Watson v. Birmingham Southern R. Co., 259 Ala. 364, 66 So.2d 903, we said:

"This court, in line with the great weight of authority, has declared the rule that, in the absence of statute, or special conditions of hazard to motorists, there is no duty on the railway company to provide special warning or safeguards to motorists, either in the day or nighttime, to prevent collisions with cars standing on such crossing. The law requires motorcars to be equipped with adequate headlights, and that they be not run at such speed that an obstruction, such as a freight car, cannot be discovered in time to come to a stop. Others are not required to take precautions against one's negligence. Otherwise stated, one may assume that another will take ordinary care.

"So it is widely held that the negligence of the driver of the motorcar will be treated as the sole proximate cause of an injury resulting from running into a standing railway car at a crossing, unless something intervenes calling for special precautions on the part of the railway employees; some condition of hazard that may lead to a collision, notwithstanding ordinary care on the part of the driver of the motorcar."

This same rule has been applied in Southern Ry. Co. v. Lambert, 230 Ala. 162, 160 So. 262; Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457; Southern Ry. Co. v. Miller, 226 Ala. 366, 147 So. 149; St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110.

Two decisions in recent years have held that the exception—i. e. some condition of hazard existed that might lead to a collision, notwithstanding ordinary care on the part of the driver of the motor vehicle, applies. In Wojciechowski v. Louisville & N. R. Co., 277 Ala. 528, 173 So.2d 72, the rule stated supra is restated, but the court held that testimony that an automatic flashing light installed by the railroad at a crossing was not working, and that the deceased driver of the motor vehicle was familiar with the crossing and entered the crossing without stopping presented a question for the jury both as to the initial negligence of the railroad and the contributory negligence of the motorist. The *Wojciechowski* case is not apt authority here because in the instant case there was no flashing crossing light. The other case, Callaway v. Adams, 252 Ala. 136, 40 So.2d 73, differs because there the crossing light was obscured by big tree

branches, the topography of the ground—a change in grade—caused the lights of the motor vehicle to be focused only on the roadway until in the immediate vicinity of the crossing, the train could not have been discovered until the motor vehicle was within 20 to 30 feet from the crossing, the driver was not familiar with the crossing, did not know it was there and going at a rate of 20 to 25 miles an hour about 120 feet was required to bring his tractor and trailer to a stop. Two ministers of the gospel, who witnessed the accident as they were driving in the same direction "were just able to bring their vehicles to a stop before reaching the crossing."

Here, the terrain was flat, the crossing could be seen at least 256 feet before reaching the crossing, the skid marks show that the deceased must have seen the train more than 90 feet before he reached the crossing and he was bound to have been familiar with the crossing. We say this because in his 49 years, except for the time he was in the military service, he had lived in the vicinity of the crossing all his life, and at no time more than six or seven miles from it. The last three years of his life he lived less than three miles from the crossing. He had lived northeast and southeast of it, at one time no more than 300 yards from it and had visited a store located so near the crossing that it appears in most of the pictures taken east of the crossing. We think there is ample evidence to show that the deceased knew the crossing existed and was familiar with it.

Appellee relies upon the following facts disclosed by the evidence in this cause to show the existence of the special circumstances or conditions of hazard making this a jury question: This accident occurred in the nighttime between 11:00 P.M. and midnight; that the highway as it approaches this crossing from the east begins to turn to the right at a point 256 feet prior to reaching the appellant's tracks; this right turn or curve is sharp and continues from the point of its beginning 256 feet east of the

tracks up until the highway reaches the tracks; that at a point where the curve begins a projection of the center line of the highway would intersect the appellant's tracks 69 feet south of the point where the center line of the highway intersects appellant's railroad tracks; that there were trees, weeds, Johnson grass and vines south of the highway and east of appellant's railroad tracks both upon appellant's right of way and upon the highway right of way which would prevent the lights of a vehicle approaching this crossing from the east from penetrating to the appellant's railroad tracks south of the hard surface roadway and that is where such lights would then be shining; that vines and Johnson grass obscured the view of travelers upon the public highway of the highway right of way sign located 256 feet east of the appellant's crossing; that the cross-arms or cross-buck at this crossing was covered with leaves; that the distance required to bring a car traveling 50 miles per hour to a complete stop is 165 feet total, including reaction time and braking time, and that the grass and vegetation had grown up along the railroad right of way and the highway right of way to such an extent that you could not see the railroad right of way when you came out of the curve immediately east of this crossing.

Appellant argues that these facts do not make a jury question as to its initial negligence, but, even assuming that it did, the contributory negligence of the deceased would still be a bar to recovery, because it is obvious that the deceased did not stop, look and listen. In Johnston v. Southern Ry. Co., 236 Ala. 184, 181 So. 253, we said:

"On the question of contributory negligence, it appears, without dispute, that the decedent was quite familiar with this crossing. The conditions relied upon as rendering it more hazardous to motorists only emphasize the importance of observing the duty to stop, look, and listen, and to have the automobile under control.

"This legal duty grows out of the well-known fact that a train cannot be stopped, or removed, if already on a crossing, with the same dispatch as a motorcar equipped as the law requires. It is a duty to see that the crossing is clear of danger from approaching trains, and even a more patent duty when the train is already on the crossing, and its presence is a warning. This court has often, with great emphasis, declared it is negligence as matter of law to disregard this duty. We think it a rule conservative of human life, and therefore to be steadfastly applied. Granting that cases may appear where delusive conditions may render a vigilant compliance with this rule ineffective to avert accident, no such case appears here. We must hold under the undisputed evidence the unfortunate victim of this accident was chargeable with contributory negligence as a proximate cause of his injury, which defeats this action as for initial negligence, if any, on the part of the trainmen. [Citing many cases.]"

The *Johnson* case has since been followed.

But we have said that certain facts, if true—a jury question—did relieve a motorist from the duty to stop, look and listen, and the trial court could properly submit the cause to the jury. Sloss-Sheffield Steel & Iron Co. v. Littrell, 246 Ala. 58, 18 So.2d 709. That case and others cited therein show that the "stop, look and listen" rule is not hard, fast or absolute in its application.

Appellant contends that it was entitled to the affirmative charge as to Count 5, the wanton count.

■■ Wantonness has been defined as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct it must be shown that with reckless

indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. Barnes v. Haney, 280 Ala. 39, 189 So.2d 779; Graves v. Wildsmith, 278 Ala. 228, 177 So.2d 448, and cases there cited.

■ What constitutes wanton conduct depends upon the facts in each particular case. Lewis v. Zell, 279 Ala. 33, 181 So.2d 101.

■ Under the facts of this case as shown by the evidence, there was not a scintilla to support the wanton count. The trial court erred in failing to give the requested affirmative charge with hypothesis as to that count.

We come now to the assignments of error which contend that the trial court erred in refusing to grant the motion for a new trial.

■ We revert to our quotation from Watson v. Birmingham Southern R. Co., 259 Ala. 364, 66 So.2d 903, that the negligence of the driver of an automobile will be treated as the sole proximate cause of an injury resulting from running into a standing (or moving) railway car at a crossing, "unless something intervenes calling for special precautions on the part of the railway employees; some condition of hazard that may lead to a collision, notwithstanding ordinary care on the part of the driver of the motorcar."

■ We think the evidence of vines, leaves, etc., obscuring the signs, and trees, grass, etc., growing on the railroad right of way in the direction from which the train was coming, connected with evidence that the claim agent of the defendant had been told by another driver, who had run into a train at the same place about six weeks before, that the obstructions prevented him from seeing the train until it was in the crossing, constituted such an exception to the announced rule in the way of something intervening or a condition of hazard as to

150

amount to a scintilla of evidence of initial negligence on the part of the defendant and justified the submission of the cause to the jury.

But we are equally certain that the motion for a new trial should have been granted. In view of the overwhelming evidence as to the speed of the automobile, the long skid marks, the unobstructed view of the crossing, the evidence of the intoxication of the driver and the great weight of the evidence against the verdict reached and the judgment rendered thereon, we are constrained to hold that the trial court erred in not granting the motion for a new trial.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.